## Commonwealth *vs.* John Odgren.

Middlesex. May 4, 2009. - October 15, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Subpoena. Practice, Criminal,* Subpoena duces tecum, Standing, Motion to suppress. *Evidence,* Sound recording, Telephone conversation.

A criminal defendant had standing to challenge the Commonwealth's issuance of subpoenas to a correctional facility to obtain records of the defendant's telephone conversations with family and friends while he was at the facility, where the defendant had a direct interest in those conversations, and where the facility could not reasonably be relied on to vindicate the defendant's special concern, as a party to the instant criminal proceeding, with ensuring that the Commonwealth abided by the rules of criminal procedure. [176-177]

Discussion of the historical development of the law concerning the issuance of criminal subpoenas; of the development of authority, pursuant to Mass. R. Crim. P. 17, to seek the production prior to trial of subpoenaed records from third parties; and of the requirement that a party seeking such pretrial production of third-party records file a motion seeking judicial approval. [178-183]

A Superior Court judge, hearing a criminal defendant's motion to suppress records of the defendant's telephone conversations with family and friends while he was at a correctional facility, correctly concluded that the Commonwealth was required to seek judicial approval pursuant to Mass. R. Crim. P. 17 (a) (2) before it issued a subpoena duces tecum to the correctional facility for the production of such records in advance of trial or an evidentiary hearing; however, the Commonwealth's failure to do so did not itself require suppression of the conversations, where the defendant did not claim prejudice from the Commonwealth's procedural misstep. [183-189]

Indictment found and returned in the Superior Court Department on March 1, 2007.

A pretrial motion to suppress evidence was heard by *Raymond J. Brassard*, J.

An application for leave to file an interlocutory appeal was allowed by *Cordy*, J., in the Supreme Judicial Court for the county of Suffolk.

*Marguerite T. Grant*, Assistant District Attorney (*Daniel J. Bennett*, Assistant District Attorney, with her) for the Commonwealth.

*Jonathan Shapiro* (*Patricia L. Garin* with him) for the defendant.

*Carlene A. Pennell,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

BOTSFORD, J. We consider whether the Commonwealth, in a criminal case, may seek the production of records from a third party in advance of trial or an evidentiary hearing by issuing a subpoena duces tecum directly to the party under G. L. c. 277, § 68, or whether it must first obtain judicial approval, pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), as construed by *Commonwealth* v. *Lampron,* 441 Mass. 265, 268-271 (2004) (*Lampron*). We conclude that it must first obtain judicial approval.[1]

*Background.* On January 19, 2007, the defendant, then sixteen years of age, was arraigned in the District Court on charges of murder in the first degree and related offenses in the stabbing death of a fellow student at Lincoln-Sudbury High School. He was ordered held without bail in the Department of Youth Services secure unit at the Plymouth County correctional facility (facility). A probable cause hearing was scheduled for March 5, 2007. See Mass. R. Crim. P. 3 (f), as appearing in 442 Mass. 1503 (2004).

On February 9, 2007, the district attorney for the northern district (district attorney or Commonwealth) issued a subpoena duces tecum to the facility's keeper of records, seeking "any books, papers, visitor log, taped phone calls, and pin list"[2] for the period from January 19 to February 12, 2007.[3] The subpoena directed the keeper of records to produce the requested materials in person at the March 5 probable cause hearing, or, "[i]n lieu of a court appearance," to "provide the requested records prior to"

---

[1] We acknowledge the amicus brief filed by the Committee for Public Counsel Services in support of the defendant.

[2] The pin list showed the time and date of the defendant's telephone calls, as well as the telephone numbers of the recipients.

[3] Pursuant to the telephone use policy of the Department of Youth Services secure unit at the Plymouth County correctional facility (facility), all telephone calls made by a juvenile to outside telephone numbers and conversations between the juvenile and visitors in the facility's visitor's room — all of which are apparently conducted by telephone — are monitored and recorded, with the exception of telephone communications between the juvenile and his attorneys or clergy. Plymouth County Correctional Facility (PCCF) 482, Inmate Telephone System (August 10, 2006).

March 5. A handwritten note accompanying the subpoena requested the records be mailed to the district attorney's office. Within a couple of days of receiving the subpoena, the facility's telephone administrator copied the recordings from the telephone system's computer hard drive onto a compact disc and mailed it to the district attorney's office.

On various dates between February 13 and March 1, 2007, the Commonwealth presented evidence of the stabbing to a grand jury, which indicted the defendant for murder in the first degree on March 1, 2007. Accordingly, the scheduled probable cause hearing in the District Court never took place; on March 14, the Commonwealth entered a nolle prosequi on the charges in that court.

Thereafter, the Commonwealth issued to the keeper of records three more subpoenas — on April 2, May 14, and July 26, 2007 — collectively requesting recordings of the defendant's telephone calls for the period from February 13 to July 31, 2007.[4] The return dates for two of the three subpoenas coincided, respectively, with a case status conference in the Superior Court (April 30) and a pretrial conference in that court (May 30); the return date for the third subpoena (July 31) was not connected to any court hearing. Each of the three subpoenas (like the February subpoena) stated that the requested materials could be provided before the return date. Within one or two days of receiving each subpoena, the keeper of records mailed compact disc recordings of the requested telephone calls to the district attorney's office.[5] According to the defendant, the subpoenaed recordings include over 2,000 minutes (33.3 hours) of conversations over a period of 191 days, the "vast majority of which" were between him and his parents and brother; some involved friends. On June 12, 2007, the Commonwealth provided the defendant copies of the recordings obtained through the February, April, and May subpoenas, pursuant to Mass. R. Crim. P. 14 (a) (1) (A), as appearing

[4]On September 1, 2007, shortly after the defendant's seventeenth birthday, he was transferred to the Cambridge jail, where he remains.

[5]According to the facility's telephone system administrator (who testified at a motion hearing we describe below), in his ten years at the facility he had received from various district attorneys' offices "thousands" of subpoenas seeking recordings of inmate telephone calls, and he had mailed the requested recordings directly to those offices. He testified that he typically responded to approximately 150 such requests a month.

in 442 Mass. 1518 (2004). As for the recordings obtained through the July subpoena, the Commonwealth provided them to the defendant some time between January and April, 2008. Trial was scheduled for September 15, 2008.

In January, 2008, the defendant notified the Commonwealth of his intent to rely on a defense of lack of criminal responsibility because of mental disease or defect. See Mass. R. Crim. P. 14 (b) (2) (A), as appearing in 442 Mass. 1518 (2004). In April, 2008, the defendant, asserting that the Commonwealth had informed him of its intent to search the subpoenaed recordings for evidence of criminal responsibility, moved to suppress the recordings. The defendant claimed that the Commonwealth lacked authority to issue the subpoenas without first obtaining judicial approval pursuant to Mass. R. Crim. P. 17 (a) (2),[6] as construed by *Lampron*, 441 Mass. at 268-271 (only judge can issue subpoena for records before trial pursuant to motion by requesting party, supported by affidavit, showing relevance, admissibility, necessity, and specificity).[7] The Commonwealth countered that it was empowered to issue the subpoenas on its own, pursuant to G. L.

---

[6]Rule 17 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 885 (1979), provides, in pertinent part:

"(a) SUMMONS. (1) *For Attendance of Witness; Form; Issuance.* A summons shall be issued by the clerk or any person so authorized by the General Laws. It shall state the name of the court and the title, if any, of the proceeding and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.

"(2) *For Production of Documentary Evidence and of Objects.* A summons may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of rule 14. The court may direct that books, papers, documents, or objects designated in the summons be produced before the court within a reasonable time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, or portions thereof to be inspected and copied by the parties and their attorneys if authorized by law."

[7]The defendant also claimed that the Commonwealth's obtaining the recordings violated his rights of privacy and against unreasonable searches and seizures, protected by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, and other constitutional rights as well. In addition, he claimed that the facility violated its policy of

c. 277, § 68,[8] and that, even were judicial approval required, it would be entitled to such approval.[9]

At the outset of the hearing on the defendant's motion, the judge (with the parties' agreement) decided to focus on whether the Commonwealth had erred in failing to comply with the requirements of rule 17 (a) (2) and *Lampron* because if so, the judge reasoned, the subpoenas would have issued improperly, and thus the judge would not need to address the defendant's constitutional claims. The judge added that, were he to conclude that the Commonwealth had erred in failing to comply with the requirements of rule 17 and *Lampron*, it would still be entitled, in a future motion, to seek to satisfy those requirements.

On May 14, 2008, following the hearing (at which the facility's telephone system administrator was the sole witness), the judge allowed the defendant's motion to suppress. He concluded that the Commonwealth had erred in failing to seek prior judicial approval before issuing the subpoenas, and ordered the parties to turn over all copies of the recordings and associated documents to the clerk of the Superior Court, where they would be impounded.

Subsequently, the Commonwealth moved under rule 17 and *Lampron* for judicial approval to subpoena a portion of the recordings it had originally sought, namely, recordings of the defendant's telephone calls from January 19 to March 6, 2007. On May 23, 2008, the judge found the Commonwealth had failed to satisfy the requirements of *Lampron* and denied the motion. He said, however, that closer to trial he would be willing to revisit the Commonwealth's attempt to subpoena the telephone calls, further noting that any future attempt by the Commonwealth to subpoena

---

producing recorded telephone calls to other criminal justice agencies only in response to "legally authorized" requests, which, according to the policy, "include court orders and subpoenas." See PCCF 482, Inmate Telephone System XVIII (August 10, 2006). As explained *infra*, these claims are not before us.

[8]General Laws c. 277, § 68, provides: "The attorney general and district attorneys may issue subpoenas under their hands for witnesses to appear and testify on behalf of the commonwealth, and such subpoenas shall have the same force, and be obeyed in the same manner, and under the same penalties, in case of default, as if issued by the clerk of the court."

[9]The Commonwealth also challenged the defendant's constitutional claims, arguing, among other things, that the defendant lacked a reasonable expectation of privacy in the telephone calls because he was aware of, and consented to, the facility's policy of monitoring and recording.

the recordings would be subject to a possible motion to quash as well as to the defendant's constitutional challenges.

Thereafter, the Commonwealth filed a petition under G. L. c. 211, § 3, in the county court, seeking review by a single justice of the denial of its *Lampron* motion. Alternatively, it requested leave to pursue an interlocutory appeal from the allowance of the defendant's motion to suppress. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). The single justice denied the Commonwealth's petition (from which the Commonwealth did not appeal),[10] but granted it leave to pursue an interlocutory appeal from the suppression ruling. We agree with the Superior Court judge that the Commonwealth was required to comply with rule 17 and to obtain prior judicial approval in seeking the defendant's telephone records from the jail, but we do not agree that suppression of the records is required because of the Commonwealth's error. The defendant, however, may still pursue the constitutional challenges that the judge deferred.[11]

*Discussion.* a. *Defendant's standing.* The Commonwealth claims the defendant lacks standing to challenge the issuance of the subpoenas because the subpoenas concern telephone records of a third party, the facility, and because in any event the defendant had no reasonable expectation of privacy in his telephone calls. We disagree. Although the recordings are, in a proprietary sense, those of the facility rather than the defendant, the defendant has a direct interest in them because they consist of his own conversations with family and friends.[12] Moreover, the defendant, as a party to this criminal case, has a special concern with ensuring that the Commonwealth abide by the rules of criminal procedure, and the facility cannot reasonably be relied on in these circumstances to vindicate that concern. Cf. *Commonwealth* v.

---

[10]Because the Commonwealth did not appeal from this order of the single justice, there is no issue before us concerning the correctness of the judge's denial of the Commonwealth's motion pursuant to *Commonwealth* v. *Lampron*, 441 Mass. 265, 268-271 (2004) (*Lampron*).

[11]Our decision in *Matter of a Grand Jury Subpoena*, 454 Mass. 685 (2009), which presented different facts, does not necessarily control the resolution of the defendant's constitutional claims.

[12]Whether that interest rises to the level of a constitutionally protected right is a matter that, as we have stated, the motion judge, with the assent of the parties, declined to address. It is thus beyond the scope of this appeal.

*Lam*, 444 Mass. 224, 228-229 (2005) (Commonwealth had standing to object to defendant's motion to issue subpoenas to third parties where Commonwealth had interest in ensuring compliance with rule 17 [a] [2]'s prohibition against using rule as discovery device or for fishing expedition, and had interest in protecting its witnesses from harassment by improper discovery requests); *United States* v. *Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (court's ability to ensure against abuse of subpoenas duces tecum "assumes that the recipient of the subpoena has some interest or incentive in filing" motion to quash or modify; "it is wishful thinking to expect that prison officials will either oppose a government-requested subpoena which implicates an incarcerated defendant's interests or else enable the defendant to file his own motion to quash by notifying him that such subpoenas have been issued")[13]; *State* v. *Barreiro*, 432 So. 2d 138, 139 n.1 (Fla. Dist. Ct. App. 1983) (defendant "has standing to move to quash a subpoena duces tecum served on a third-party corporation based on his status as a defendant complaining of a violation of the criminal procedure rules").[14] The defendant has standing.

[13]The court in *United States* v. *Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991), further explained that, independent of a defendant's interest in seeing that the rules of criminal procedure are followed, the court has its own interest in seeing that its subpoena authority is not usurped. See *id.* at 1493 n.13 ("The government's argument that Noriega lacks standing to challenge a subpoena served on a third party is off point. The court need not look to any litigant in order to quash a subpoena which seeks to usurp the court's exclusive authority to permit production of materials prior to trial").

[14]We note that in comparable cases, this court has considered the merits of claims by defendants that the Commonwealth has obtained records from third parties through the improper use of subpoenas, despite the Commonwealth's claims that the defendant lacked standing. See *Commonwealth* v. *Cote*, 407 Mass. 827, 830 (1990) (defendant claimed in motion to suppress that Commonwealth misused grand jury subpoena to obtain telephone messages from third-party answering service where Commonwealth failed to present messages to grand jury; standing raised by parties in their briefs but not discussed by court); *Commonwealth* v. *Smallwood*, 379 Mass. 878, 888 (1980) (defendant claimed in motion to suppress that Commonwealth misused subpoena power under G. L. c. 277, § 68, to interview witness on nontrial day; standing raised in Commonwealth's brief but not discussed by court. Cf. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 178, cert. denied, 525 U.S. 1007 (1998) (where Commonwealth obtained telephone company records by administrative subpoena under G. L. c. 271, § 17B, defendant could challenge through motion to suppress whether Commonwealth had reasonable grounds to believe defendant used telephone for unlawful purpose).

b. *Historical development of criminal subpoenas.* Before we address the Commonwealth's claims concerning its subpoena power, it is useful first to examine the development of our law governing criminal subpoenas.

1. *Subpoenas by statute and rule.* General authority for issuing subpoenas in criminal cases is granted by G. L. c. 233, § 1[15]; G. L. c. 277, § 68 (see note 8, *supra*); and Mass. R. Crim. P. 17, 378 Mass. 885 (1979) (see note 6, *supra*). See *Application of a Grand Jury of N.Y.*, 8 Mass. App. Ct. 760, 764 (1979). We consider the evolution of those authorities.

The earliest statutory authority for issuing criminal subpoenas — a precursor to G. L. c. 233, § 1 — granted such power to justices of the peace. See St. 1783, c. 51, § 2 (justices of peace "authorized and impowered to grant subpoenas for witnesses in all criminal causes pending before" various courts). A subsequent version of that statute provided that, unless in connection with a "complaint brought before himself," a justice of the peace could issue a subpoena in a criminal case only at the "request" of a prosecutor or defendant for "witnesses to appear at any court . . . to give evidence." St. 1791, c. 53.[16] Neither prosecutors nor defendants were statutorily required, however, to obtain leave from a justice of the peace, but merely had to "request" the issuance of a subpoena. The same is true today, under G. L. c. 233, § 1. See *Commonwealth* v. *Mitchell*, 444 Mass. 786, 791-792 n.12 (2005). But neither G. L. c. 233, § 1, nor its predecessors expressly authorize the issuance of subpoenas *in advance of* trial or an evidentiary hearing.

Through a recodification of the Massachusetts statutes in 1836, justices of the peace retained their authority to issue subpoenas at

[15]General Laws c. 233, § 1, provides: "A clerk of a court of record, a notary public or a justice of the peace may issue summonses for witnesses in all cases pending before courts, magistrates, auditors, referees, arbitrators or other persons authorized to examine witnesses, and at all hearings upon applications for complaints wherein a person may be charged with the commission of a crime; but a notary public or a justice of the peace shall not issue summonses for witnesses in criminal cases except upon request of the attorney general, district attorney or other person who acts in the case in behalf of the commonwealth or of the defendant. If the summons is issued at the request of the defendant that fact shall be stated therein."

[16]Such authority included the power to issue subpoenas duces tecum. See *Application of a Grand Jury of N.Y.*, 8 Mass. App. Ct. 760, 764 (1979).

the request of prosecutors and defendants, see R.S. (1836), c. 85, § 39, but for the first time prosecutors were given independent statutory authority to issue subpoenas under their own signatures. See R.S. (1836), c. 136, § 25. That statute, substantively identical to its modern incarnation, G. L. c. 277, § 68, meant not only that a prosecutor was no longer required to "request" that a justice of the peace issue a subpoena for a witness or records, but also that, in the context of a grand jury investigation, a prosecutor was not required to obtain prior approval from the grand jury to issue a subpoena. See 1 S.S. Beale, W.C. Bryson, J.E. Felman & M.J. Elston, Grand Jury Law and Practice § 6:2, at 6-13 (2d ed. 2008) (G. L. c. 277, § 68, "allow[s] the prosecutor to exercise the subpoena power without the grand jury's prior approval"). See also Massachusetts Superior Court Criminal Practice Manual § 1.6.8 (a) (Mass. Continuing Legal Educ. 1999 & Supps. 2003, 2006) (witnesses may be summoned to testify before grand jury by members of grand jury or prosecutor).[17] As with G. L. c. 233, § 1, however, G. L. c. 277, § 68, which speaks of subpoenas for witnesses "to appear and testify" (see note 8, *supra*), makes no reference to issuing subpoenas *in advance of* trial or an evidentiary hearing.[18]

Following the 1836 recodification of our statutes, the next major development in our law of criminal subpoenas came in 1979, with the promulgation of the Massachusetts Rules of Criminal Procedure, 378 Mass. 842 (1979). The Reporters' Notes to Mass. R. Crim. P. 17 explain that the rule "is for the most part in

---

[17]Whether, and if so in what circumstances, a prosecutor has the authority to screen subpoenaed witnesses or records before presenting them to the grand jury is beyond the scope of this case. See generally 1 S.S. Beale, W.C. Bryson, J.E. Felman & M.J. Elston, Grand Jury Law and Practice § 6:2 (2d ed. 2008).

[18]The Commonwealth suggests that R.S. (1836), c. 136, § 25, was enacted partly in response to the difficulty the Commonwealth had in producing witnesses for a trial in 1834 concerning the burning of a convent in Charlestown by an anti-Catholic mob. See The Charlestown Convent: Its Destruction by a Mob, on the Night of August 11, 1834, 29-31 (1870). Notwithstanding the Commonwealth's dilemma in that particular case, even before the enactment of R.S. (1836), c. 136, § 25, a prosecutor could, as discussed above, obtain a subpoena for a witness from a justice of the peace, and such a subpoena could be enforced by legal process. See The Charlestown Convent, *supra* at 29-30; *Commonwealth* v. *Buzzell*, 16 Pick. 153, 156 (1834). In any event, the Commonwealth makes no claim that R.S. (1836), c. 136, § 25, was enacted to allow prosecutors to subpoena witnesses or records *prior to* trial or an evidentiary hearing.

accord with prior Massachusetts law," and refer specifically to
G. L. c. 233, § 1. Reporters' Notes to Mass. R. Crim. P. 17,
Mass. Ann. Laws, Rules of Criminal Procedure, at 1521-1522
(LexisNexis 2008). The "prototype" for our rule 17 was Fed. R.
Crim. P. 17 (Federal Rules of Criminal Procedure became effec-
tive in 1946).[19] See Reporters' Notes to rule 17, *supra.* See also
*Lampron,* 441 Mass. at 270 ("Because our rule was modeled
after Fed. R. Crim. P. 17 [c] and is intended to address the same
circumstances, we adopt the standards articulated by the Federal
courts regarding the issuance of a subpoena for production of
documentary evidence"). We now examine rule 17's connection
to prior Massachusetts law, and consider how Federal courts have
interpreted the cognate Federal rule.

2. *Rule 17 subpoenas.* Rule 17 (a) (1) and (2) — consistent
with G. L. c. 233, § 1, and G. L. c. 277, § 68 — empower a
court clerk or any person authorized by statute to issue a sum-
mons,[20] without prior judicial approval, for a witness to "attend
and give testimony" and produce "books, papers, documents, or
other objects" (collectively, records) at a trial or evidentiary hear-
ing. See *Commonwealth* v. *Mitchell,* 444 Mass. at 791-792 n.12;

---

[19]Rule 17 of the Federal Rules of Criminal Procedure provides, in pertinent
part, as follows (these provisions have not changed substantively since the
version that existed in 1979, when our rule 17 was promulgated):

"SUBPOENA.

   "(a) Content. A subpoena must . . . command the witness to attend
   and testify at the time and place the subpoena specifies . . .

   "(c) Producing Documents and Objects.

   "(1) *In General.* A subpoena may order the witness to produce any
   books, papers, documents, data, or other objects the subpoena
   designates. The court may direct the witness to produce the
   designated items in court before trial or before they are to be
   offered in evidence. When the items arrive, the court may
   permit the parties and their attorneys to inspect all or part of
   them.

   "(2) *Quashing or Modifying the Subpoena.* On motion made
   promptly, the court may quash or modify the subpoena if compli-
   ance would be unreasonable or oppressive."

[20]"Summons" is synonymous with "subpoena" in our rules of criminal
procedure. See *Commonwealth* v. *Mitchell,* 444 Mass. 786, 788 n.4 (2005).

*Lampron, supra* at 270 (rule 17 [a] [2] authorizes issuance of summons "for a trial or evidentiary hearing"). See also 25 Moore's Federal Practice par. 617.02[1], at 617-6–617-7, and par. 617.08[1], at 617-19 (3d ed. 2009) (under Fed. R. Crim. P. 17 [a] and [c] [1], subpoena may issue for witness's appearance, including records, "at any type of criminal proceeding in which evidence may be adduced," such as before grand jury, at trial, or at defendant's competency or detention hearing); K.M. Brinkman & G. Wiessenberger, Federal Criminal Procedure: Litigation Manual at 206 (2008) ("Rule 17 provides procedures for obtaining witness testimony and tangible evidence by subpoena for grand jury, trial, Rule 15 depositions [compare Mass. R. Crim. P. 35, 378 Mass. 906 (1979)], and pretrial and post-trial hearings such as preliminary examinations, suppression hearings, and sentencing hearings. Rule 17 cannot be used to conduct discovery").

Where rule 17 (a) (2) departs from earlier Massachusetts law is in authorizing the production of subpoenaed records "within a reasonable time *prior to* the trial or . . . when they are to be offered in evidence" (emphasis added), when the court so directs. The change was "not intended to permit the use of summonses to subvert the discovery rule, Mass. R. Crim. P. 14," as amended, 444 Mass. 1501 (2005), but "to permit the court to avoid delay where the production of many books, papers, documents, or other objects would delay the proceedings if not ordered until the . . . commencement" of the trial or evidentiary hearing. Reporters' Notes to Mass. R. Crim. P. 17 (a) (2), *supra* at 1522. Accord *Commonwealth* v. *Mitchell, supra* at 791. See 2 C.A. Wright, Federal Practice and Procedure § 274, at 241-242 & n.15 (3d ed. 2000) (although most of Federal rule 17 [c] "was a restatement of prior law," its allowance of either side to inspect subpoenaed records "prior to the trial" was "an innovation," meant to expedite trial by providing time and place before trial for inspection of subpoenaed materials).

Unlike rule 14, which governs discovery between the parties, rule 17 allows for pretrial access to records from third parties. See *Commonwealth* v. *Dwyer*, 448 Mass. 122, 140 n.22 (2006); *Lampron*, 441 Mass. at 268. That access is potentially available to both prosecutors and defendants. See *Martin* v. *Commonwealth*, 451 Mass. 113, 123 n.20 (2008); *Commonwealth* v. *Draheim*, 447 Mass. 113, 118 n.12 (2006); *Commonwealth* v. *Mitchell*, 444

Mass. at 798 n.17; *Lampron, supra* at 268-270. See also 2 C.A. Wright, Federal Practice and Procedure, *supra* at § 274, at 240 (government as well as defendant may use Federal rule 17 [c]); 5 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 20.2(d), at 371 (3d ed. 2007) (referring to use of Federal rule 17 [c] by both prosecutors and defendants for pretrial production of records).

In *Lampron*, we concluded that a party seeking pretrial production of third-party records must file a motion seeking prior judicial approval. See *Lampron*, 441 Mass. at 270 (only judge has authority, on filing of motion, to issue subpoena for records prior to trial).[21] Once a subpoena has issued, it may be challenged by a motion to quash or for modification. See *id.* at 267-268. Accord *Commonwealth* v. *Mitchell*, 444 Mass. at 798-799.

---

[21]This approach finds support in the language of rule 17, which, while not expressly requiring prior judicial approval, states that "[t]he court may direct" that the subpoenaed party produce the requested records before the court within a reasonable time prior to the trial or evidentiary hearing. See Mass. R. Crim. P. 17 (a) (2). The cognate Federal rule has similarly been construed to require prior judicial approval. See 2 C.A. Wright, Federal Practice and Procedure § 274, at 244-245 & n.15 (3d ed. 2000) ("Some courts hold that the court's discretion must be invoked by motion in advance if a subpoena is to be made returnable in advance of the trial. This is an orderly and desirable procedure and one frequently followed . . ."). Accord 25 Moore's Federal Practice par. 617.08[1], at 617-19 (3d ed. 2009) (Federal rule 17 [c] "includes a basis for subpoenaing documents for production before trial as long as judicial approval is received").

In 2008, Federal rule 17 (c) was amended to implement the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8) (2006). The amendment provides that a pretrial subpoena seeking "personal or confidential information about a victim may be served on a third party only by court order," and requires that notice normally be given to the victim to allow him or her to move to quash, modify, or otherwise object. Fed. R. Crim. P. 17 (c) (3) (effective Dec. 1, 2008). The Commonwealth argues that this amendment shows that, before its enactment, judicial approval was unnecessary for the issuance of subpoenas for any sort of records. We disagree. Although the 2008 amendment represents the first explicit reference in the rule to the need for a party to obtain judicial approval, the amendment does more than that: it allows the victim to be heard when records concerning him or her are sought from another party. Moreover, even before the 2008 amendment's enactment, Federal courts "frequently followed" the "orderly and desirable" practice of requiring judicial approval to effectuate the purpose of rule 17 (c). See 2 C.A. Wright, Federal Practice and Procedure, *supra*; Moore's Federal Practice, *supra*. We have uncovered no authority indicating that Federal courts ever have based the necessity of prior judicial approval on whether the records sought are privileged or confidential.

As for the standard that a party must satisfy in seeking the issuance of a pretrial subpoena, in *Lampron* we adopted the standard used by Federal courts in connection with subpoenas issued pursuant to Federal rule 17 (c). See *Lampron*, 441 Mass. at 269-270 (adopting standard used in *United States* v. *Nixon*, 418 U.S. 683, 699-700 [1974]).[22] We said in *Lampron* that "the relevancy determination" set forth in the first prong of the *Nixon* test, see note 22, *supra*, "must be satisfied before *any documents of any kind* may be summonsed from nonparties" (emphasis added). *Lampron*, *supra* at 268. Moreover, the requirement that a party seek prior judicial approval "must be followed whenever *any* documents, *including* documents likely to be privileged, are sought prior to trial" (emphasis added). *Id.* at 270, citing *Commonwealth* v. *Bishop*, 416 Mass. 169, 185-186 (1993) (discussing defendant's request for unprivileged school attendance records). Accord *Commonwealth* v. *Dwyer*, 448 Mass. at 140. With these legal principles in mind, we now address the Commonwealth's claims regarding its subpoena.

c. *Commonwealth's subpoena.* The Commonwealth raises several claims regarding the use of its subpoena power in this case. First, it contends that it was authorized, under G. L. c. 277, § 68, to issue the February subpoena without seeking prior judicial approval under *Lampron* because G. L. c. 277, § 68, authorizes it to subpoena any third-party records as long as the return date coincides with an evidentiary hearing, as the return date for the February subpoena did: it coincided with the scheduled (although not held) probable cause hearing.[23] We disagree. The

[22] "[T]he party moving to subpoena documents to be produced before trial must establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." ' " *Lampron*, 441 Mass. at 269, quoting *United States* v. *Nixon*, 418 U.S. 683, 699-700 (1974). Regarding the first factor, we said a defendant "is required to make a factual showing that the documents sought are relevant and have evidentiary value," and that "[p]otential relevance and conclusory statements regarding relevance are insufficient." *Id.*

[23] The Commonwealth conceded at oral argument that the April, May, and July subpoenas were defective because none of their return dates corresponded to a scheduled date for an evidentiary hearing.

subpoena was invalid because it allowed the keeper of records to provide the recordings *in advance of* the probable cause hearing, contrary to the language and historical development of G. L. c. 277, § 68, discussed *supra*, which indicate the records should be produced only at an evidentiary hearing or at trial. Moreover, it is unclear whether the records were relevant to the probable cause hearing. Neither the language nor the history of G. L. c. 277, § 68, suggests that a prosecutor may use an evidentiary hearing intended for one purpose to subpoena records for another, unrelated purpose. We conclude that such use of a subpoena would be improper.[24]

Second, the Commonwealth suggests that a reference we made in *Lampron* to G. L. c. 277, § 68, shows that the Commonwealth may use G. L. c. 277, § 68, instead of rule 17 (a) (2), to obtain third-party records before trial. The Commonwealth is not correct. In *Lampron*, the Commonwealth argued that defense counsel's affidavit filed in support of a motion to subpoena documentary evidence was flawed because it included facts not within counsel's personal knowledge. *Lampron*, 441 Mass. at 270. In explaining that we were "disinclined to give a hypertechnical reading" to the requirement that such an affidavit be made on personal knowledge, see Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), we referred to a prosecutor's authority under G. L. c. 277, § 68, to issue a subpoena under his or her own signature, with no required showing of personal or any other knowledge on the prosecutor's part. See *Lampron, supra* at 270-271. The reference was intended only to illustrate the point that, in view of a prosecutor's ability to issue a records subpoena (for trial or an evidentiary hearing) with *no* showing of personal knowledge, it would be inappropriate to require a far more onerous showing from the defendant under rule 17; we did not mean to suggest that a prosecutor may obtain third-party records before trial under G. L. c. 277, § 68. In fact, in other cases we have said it would be improper for a prosecutor to do so. See *Commonwealth* v. *Mitchell*, 444 Mass. at 798 n.17 ("it would be unethical for the Commonwealth to use [its] statutory authority

---

[24]We note that, when subpoenaing records before trial pursuant to rule 17 (a) (2) and *Lampron*, the records are to be delivered to the court where the judge may allow the parties and their attorneys to inspect and copy them; the subpoena should not direct that copies of the records be sent directly to the requesting party at the same time that they are submitted to the court.

[G. L. c. 277, § 68,] for any purpose other than to present a witness or evidence to a court or grand jury"). See also *Commonwealth* v. *Cote*, 407 Mass. 827, 832 (1990); *Commonwealth* v. *Smallwood*, 379 Mass. 878, 887 (1980); *Commonwealth* v. *Liebman*, 379 Mass. 671, 676-677 (1980). As we have explained above, rule 17 (a) (2), and *Lampron*, not G. L. c. 277, § 68, provide the proper mechanism to subpoena third-party records before trial.

Third, the Commonwealth argues that, were it required to comply with *Lampron*, it should only have to do so where the records sought are privileged or confidential, and the defendant's telephone calls in this case were neither. Again, we disagree. Although *Lampron* involved a defendant's attempt to subpoena statutorily privileged records, we have applied the *Lampron* standard to requests for other types of records, not all of which were privileged or necessarily confidential. See *Commonwealth* v. *Matis*, 446 Mass. 632, 633, 635 (2006) (standard applied to request to inspect, measure, and photograph interior of complainant's home); *Commonwealth* v. *Reed*, 444 Mass. 803, 807-808 (2005) (standard applied to request for medical records concerning complainant's pelvic examination); *Commonwealth* v. *Lam*, 444 Mass. at 231 (standard applied to request for elementary and middle school attendance records). Moreover, the *Nixon* standard has been applied in Federal courts to both prosecutors' and defendants' efforts to seek a wide array of records, not all of which were necessarily confidential. See, e.g., *United States* v. *Smith*, 135 F.3d 963, 972-973 (5th Cir. 1998) (government sought from television station nonconfidential videotape recording of interview of defendant); *United States* v. *Beckford*, 964 F. Supp. 1010, 1031 (E.D. Va. 1997) (defendants sought, among other things, records from State and Federal correctional facilities concerning defendants themselves); *United States* v. *King*, 164 F.R.D. 542, 545-546 (D. Kan. 1996) (defendant sought patrol logs of security company hired to patrol bank where defendant accused of robbing automatic teller machine, as well as personnel records of bank employees); *United States* v. *Walters*, 558 F. Supp. 726, 727-728 (D. Md. 1980) (government sought from telephone companies records of telephone calls defendant made to his mother and former employer).[25]

---

[25]Although the *Nixon* case involved a third-party subpoena issued by the

In arguing that it should not have to comply with *Lampron* when seeking nonprivileged and nonconfidential records before trial, the Commonwealth mentions as examples of such records "medical records of persons treated after a motor vehicle collision; school attendance records of a child rape victim; or bank or credit records of a larceny victim." But, as shown above, when comparable sorts of records are sought by defendants, courts have required the defendants to comply with *Lampron*. We reject the Commonwealth's suggestion that its duty to investigate crimes absolves it of having to comply with the same procedures as defendants, particularly given the Commonwealth's formidable investigatory tools, including its grand jury subpoena power. See note 25, *supra*.[26] The procedures required by rule 17 seem especially appropriate in a case like this one, where the information sought — recordings of the defendant's telephone conversations — are at least arguably confidential in some sense, whether entitled to constitutional protection or not.

This result is consistent with Federal decisions upholding claims that prosecutors, without first obtaining judicial approval under

designated Special Prosecutor to the President, the standard used in *Nixon* was drawn from cases where defendants had sought records from the government, not from a third party. See *United States v. Nixon*, 418 U.S. at 698-699, citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951), and *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952). The Supreme Court in *Nixon* expressly left open the question whether the standard for obtaining third-party records should be lower than that for records sought from an opposing party. See *United States v. Nixon*, *supra* at 699 n.12. In any event, the *Nixon* standard has "become the touchstone for all Rule 17 (c) analysis, cited or quoted in virtually every case analyzing Rule 17 (c)." Rosenberg, The By-Ways and Contours of Federal Rule of Criminal Procedure 17(c): A Guide through Uncharted Territory, 45 Criminal Law Bull. 202 (2009). Some commentators have contended that the *Nixon* standard is more burdensome to defendants than prosecutors because of prosecutors' powerful investigative tools — most notably, grand jury subpoenas, to which the *Nixon* standard does not apply, see *United States v. R. Enters., Inc.*, 498 U.S. 292, 299-301 (1991) — and that, accordingly, a lower standard should apply to defendants. See Rosenberg, *supra* at 208-215; Morvillo, Motion Denied: Systematic Impediments to White Collar Criminal Defendants' Trial Preparation, 42 American Crim. L. Rev. 157, 160 n.12 (2005); Henning, Defense Discovery in White Collar Criminal Prosecutions, 15 Ga. State U.L. Rev. 601, 641-649 (1999).

[26]As we have noted before, "[a]ny informal extrajudicial process that exists . . . by which a party involved in litigation may successfully obtain investigative materials that may be of help in preparing for trial, or may be useful during trial, is beyond the scope of this case." *Commonwealth v. Mitchell*, 444 Mass. at 791-792 n.12.

Fed. R. Crim. P. 17 (c) and *Nixon*, had improperly issued pretrial subpoenas to correctional facilities seeking recorded telephone conversations of detainees. See United States *vs.* Eye, U.S. Dist. Ct., No. 05-00344-01-CR-ODS (W.D. Mo. April 15, 2008) (government misused rule 17 [c] subpoena without seeking court order where it issued subpoena to correctional facility for recordings of defendant's telephone calls with return date of first day of trial, "knowing full well," based on experience with prison, recordings would be — and were — voluntarily mailed to prosecutor's office before trial)[27]; *United States* v. *Noriega*, 764 F. Supp. at 1492-1494 (without seeking prior judicial approval, government improperly issued rule 17 [c] subpoenas to correctional facility seeking recordings of telephone calls of detainee where subpoena's return dates corresponded with no court proceedings; need for judicial approval should have been "manifest" given "coinciding interests of prosecutors and prison authorities," rendering subpoenas "mere formalities"; "a prison recording policy premised on legitimate security needs was transformed into freewheeling and open-ended discovery for the prosecution"). These cases support our conclusion that the Commonwealth should have sought prior judicial approval under rule 17 (a) (2) and *Lampron* to issue the subpoena here.[28]

We therefore agree with the motion judge that the subpoena

---

[27]In United States *vs.* Eye, U.S. Dist. Ct., No. 05-00344-01-CR-W-ODS (W.D. Mo. April 15, 2008), the court noted that, according to defense counsel, in the Federal Western District of Missouri both prosecutors and defense attorneys had previously taken a "liberal approach" to using Fed R. Crim. P. 17 (c), treating attorney-issued pretrial subpoenas as court orders, because of the attorneys' status as officers of the court, and considering the rule satisfied so long as the issuing party provided the other side notice and copies of the materials delivered to the court. The court, however, admonished the government not to use a rule 17 (c) subpoena without a court order because of the possibility of subpoenaed records not being timely shared with the defense. *Id.*

[28]The result we reach in this case — that, apart from grand jury proceedings, the Commonwealth must obtain judicial approval before seeking the production of records from a third party in advance of an evidentiary hearing or trial — is compelled by the authorities we have discussed above, including Mass. R. Crim. P. 17 (a). Under our current law, the only way for a prosecutor, postindictment, or a defendant to subpoena third-party records without first obtaining judicial approval is to subpoena the records for production on the first day of trial, on the theory that the party subpoenaing the records wishes to use them at trial. We are aware of the logistical problems and delay that such a procedure can pose for the parties and the court. To that end, the

in this case issued improperly. We do not agree, however, that the circumstances warrant suppression. In allowing the defendant's motion to suppress, the judge, finding that the Commonwealth acted in good faith, ruled only that the manner in which the Commonwealth issued the subpoena was defective; he made no ruling on whether the Commonwealth's obtaining the recordings violated any constitutional right of the defendant's for which evidentiary exclusion of the recordings might be appropriate. See *Commonwealth* v. *Lora*, 451 Mass. 425, 438-439 (2008) (exclusionary rule typically reserved for cases involving constitutional violations). Nor did the defendant voice any objection to the motion judge's deferment of the constitutional issues to a later time.

The defendant has not claimed prejudice from the Commonwealth's procedural misstep in failing to comply with rule 17 (a) (2) and *Lampron*. He was provided copies of the subpoenaed recordings early in the proceedings, and the Commonwealth has narrowed its interest in the defendant's calls to a circumscribed period, from January 19 to March 6, 2007. See *Commonwealth* v. *Smallwood*, 379 Mass. at 888, quoting *Commonwealth* v. *Hanger*, 377 Mass. 503, 509 (1979) (no prejudice where, despite prosecutor's interview of witness through misuse of G. L. c. 277, § 68, subpoena, existence of interview and statements of witness revealed to defendant "sufficiently in advance of trial to permit investigation"). See also United States *vs.* Eye, *supra* (no prejudice where defendant claimed no prejudice; was given copies of recordings shortly after government received them; and was in no worse position than if government had obtained recordings properly under rule 17 [c]); *United States* v. *Noriega*, 764 F. Supp. at 1494 (no prejudice where government provided recordings to defendant, "thereby precluding the 'trial by ambush' which results when a defendant's statements hidden from discovery are suddenly used against him at trial").

Commonwealth has suggested, in substance, that there may be value in allowing parties to subpoena third-party records to court before trial (and without prior judicial approval) in some limited circumstances, e.g., where nonprivileged and nonconfidential records are concerned. We take no position on this or any other possible change to rule 17, or on whether rule 17 should be amended at all. We invite the standing advisory committee on the Massachusetts Rules of Criminal Procedure to study the issue by obtaining necessary comment from affected and interested parties and to recommend to us whether rule 17 should be amended, and if so, in what respect.

We therefore conclude that the Commonwealth's failure to comply with G. L. c. 277, § 68, and rule 17 (a) (2), does not itself warrant suppression of the defendant's recorded telephone conversations. As we noted at the outset, however, the defendant's motion to suppress raised a claim that suppression of this evidence was required because turning the records over to the prosecution without any showing of probable cause violated various of his constitutional rights. The judge did not reach these claims, but the defendant is now entitled to have them considered.

We remand the case to the county court for entry of an order vacating the Superior Court order allowing the motion to suppress and remanding the case for further proceedings consistent with this opinion.

*So ordered.*