Nickerson, Gary A., J.
The defendant, Anthony A. Russ, is facing an indictment for murder in the second degree and related charges. By his Motion To Suppress Jail Recordings, Russ seeks to bar the admission at trial of recordings of his telephone conversations from the Barnstable County Jail. The motion was heard on February 4th and April 1st and 2nd, 2010. Based on all the credible evidence[1] the court enters the following findings of fact.
FINDINGS OF FACT
Russ stands charged as the gunman in two separate shooting incidents in Hyannis during 2007. He allegedly assaulted Dennis Edwards by firing a handgun at Edwards in the Hiramar Road neighborhood on September 21st. The murder charge stems from the earlier fatal shooting of Jacques Sellers in the General Patten Drive neighborhood on July 18th. The Edwards shooting led promptly to Russ’ arrest. Upon arraignment in the Barnstable District Court Russ was ordered held at the Barnstable County House of Correction in Pocasset in lieu of $50,000 bail. District Court charges in the Sellers death were not brought until December 7, 2007. Indictments were returned in the Edwards matter on November 27, 2007 and in the Sellers case on January 8, 2008.
*201 In the days immediately following Russ’ arrest on the Edwards case, Barnstable Police Detective Brian Guiney determined that a single firearm was used in the Edwards shooting and that two guns were used in the Sellers shooting.[2] Guiney had a genuine concern that the weapons were still “on the street.” This fear, coupled with Guiney’s desire to further his investigation into both incidents, led him to secure and review the recordings of Russ’jailhouse telephone calls. This was not the first case in which Guiney had turned to jailhouse telephone calls as a source of information. While he did not routinely review such recordings in every shooting case, he had done so in several other cases.
During 2007, officers in charge at the Barnstable County Jail routinely recorded detainee and inmate calls as a tool to ensure security within the institution. No showing was made at the hearing on this motion to dispute this practice as a measure serving legitimate penological interests. Inmates and detainees awaiting trial at the Barnstable Jail are all advised upon booking of the policy whereby their telephone calls are recorded. Next to the detainee/inmate telephone on each pod (cell block) there is a placard prominently displayed warning the detainees/inmates that their calls are recorded. When a detainee/inmate places a call a recording plays on the line telling both the caller and the recipient of the call that the conversation is being monitored and recorded. There is technology in place precluding the recording of attorney/client conversations. No evidence has been offered to suggest Russ was unaware of the recording of his calls. To the contrary, Russ’ resort to talking in code suggests he was well aware he was being recorded.
On October 1, 2007, the District Attorney issued a summons commanding the officer in charge at the jail “to appear before the District Court next holden at Barnstable ... on Forthwith, then and there to give such evidence . . . before said Court - or the Grand Jury, in the matter of Commonwealth v. A Pending Investigation Duces Tecum. Please send a copy of recorded telephone conversations involving inmate Anthony A. Russ, DOB 3/26/88, for a time period of September 24, 2007 to present.” The Sheriffs office prepared a CD of Russ’ calls and forwarded the CD to the District Attorney’s office. Prior thereto the jailers had not listened to Russ’ calls for any reason.
Guiney and state police troopers listened to Russ’ calls upon the arrival of the CD in the prosecutor’s office. None of the calls were privileged in nature. Guiney concluded that during certain calls Russ, speaking in code, discussed guns with his known criminal associates. While none of the jail house calls were presented to the grand jury which returned indictments in the Edwards case, calls were played for the Sellers’ grand jurors prior to the return of the murder indictment. No one contests the material nature of the calls as part of the evidence relied upon by the Sellers grand jurors.
DISCUSSION
The Commonwealth concedes that the summons used to obtain Russ’ calls was improper per Commonwealth v. Odgren, 455 Mass. 171, 187 (2009). This court concurs. The summons is ambiguous on its face being neither a grand juiy subpoena nor a directive for the deputy sheriff to appear at a date certain for a court hearing with the recorded calls in hand. The document directs the witness to appear “before the District Court” but goes on to reference “said court — or the Grand Jury, in the matter of Commonwealth v. A Pending Investigation.” The evidence at hand leads this court to infer that the summons issued to facilitate the investigation into both shootings. While some of the calls were played for the Sellers grand jury, no evidence has been presented to suggest the summons issued at the behest of the grand jury.[3]
While the summons was improperly issued, that does not compel a conclusion that the District Attorney and the detective acted in bad faith. The summons at hand is no more illicit than the summons in Odgren. Guiney was well aware of the urgent public safety goal of recovering the guns. He suspected that Russ acted in concert with others in the Sellers shooting. Barnstable County grand jurors do not sit day to day but are called to serve on an irregular basis. In recent years there has been a tendency to have the grand jury meet one day (or one half day) every other week or every third week. Such infrequent and brief sittings necessitate that law enforcement officers assess voluminous records, such as jailhouse calls, in advance of a grand jury’s meeting to better prepare for the event. See Commonwealth v. Odgren, 455 Mass. at 179 fn. 17. The District Attorney’s misstep does not necessitate the suppression of the calls as trial evidence. Commonwealth v. Odgren, 455 Mass. at 189; also see Commonwealth v. Cote, 407 Mass. 827, 830-31 (1990).
The Commonwealth urges the court to deny the motion to suppress on the strength of Odgren, as referenced above, and In The Matter Of A Grand Jury Subpoena, 454 Mass. 685 (2009). The latter case, in the government’s view, forecloses the defendants’ challenge on constitutional grounds. Defendant’s brief recites an array of constitutional claims but when the court asked counsel repeatedly at argument on February 4th to articulate the constitutional basis of her challenge nothing more was forthcoming than that the dissent in Grand Jury Subpoena was right. Surely there is an indication at footnote 11 in Odgren that Grand Jury Subpoena may not be the final word on a defendant’s constitutional claims in this area. Commonwealth v. *202 Odgren, 455 Mass. at 176.[4] Footnote 11 may be an allusion to Odgren’s status as a juvenile warranting enhanced constitutional protection for, within days of the Odgren decision, the same court, citing Odgren, said “that the constitutional rights of an adult pretrial detainee, such as the defendant [Hart], are not violated when the sheriff provides copies of the detainee’s recorded telephone calls in response to a subpoena, provided that all parties have notice that the calls are subject to the monitoring and recording, and the monitoring and recording is justified by legitimate penological interests.” Commonwealth v. Hart, 455 Mass. 230, 244 (2009). A trial judge should not venture beyond A Grand Jury Subpoena absent a clearly articulated constitutional claim made at the hearing on the motion.[5], [6]
ORDER
For the above stated reasons, it is ORDERED that the defendant’s Motion To Suppress Jail Recordings be DENIED.

 The motion was submitted to the court on the arguments of counsel on February 4th. Thereafter, defense counsel was given leave to present evidence on April 1st and 2nd. There is little dispute on the evidence.

 A second individual, Julian Green, has been indicted in the Sellers death on the theory that he was the second gunman.

 Comparison is invited to the summons for Russ' school records, the topic of this court’s decision docketed as pleading no. 123. In that instance, the summons was for a grand jury hearing and was signed by the District Attorney, the Foreperson of the Grand Jury and a Superior Court Justice.

 On remand to the trial court, Odgren’s motion to suppress on constitutional claims was denied. Commonwealth v. Odgren, Middlesex MIC 2007-00254 Decision entered 3/21/10 by Haggerly, J.

 Counsel did argue that Russ was being treated unfairly as an individual held in lieu of bail, but her argument lacks a foundation in fact and case law precedent. Obviously Russ did not make bail in late September or thereafter, but the extent of his financial resources in the fall of 2007 is unclear. At one point in December and January he was represented on the murder charge by private counsel. The record does not demonstrate that Russ was cut off from outside contact but for his telephone calls. He was lodged at the county institution, a reasonable drive from his home in Hyannis, with customary access to visitors (visitations are monitored at the Barnstable Jail).

 The Supreme Judicial Court’s recent reference to the wisdom of the United States Supreme Court set forth in Rodriguez de Quyas bears repeating: “If a precedent of this court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, (lower courts] should follow the case which directly controls, leaving to this court the prerogative of overruling its own decisions.” Commonwealth v. Runyan, 456 Mass. 230, 234 (2010), quoting Rodriguez de Ouijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989).