Macdonald, D. Lloyd, J.
The defendant Timothy Cassidy (“Cassidy”) moves to suppress a certain letter to his father that was seized while Cassidy was detained at the Bristol County House of Correction. The defendant asserts that because the Sheriffs staff allegedly failed to comply with the Department of Correction’s regulations with regard to the opening of inmate mail at county institutions, 103 CMR 900.00 et seq., his reasonable expectation of privacy derived from the federal Fourth and Fourteenth Amendments and from Article 14 of the Commonwealth’s Declaration of Rights was violated.
The motion is DENIED on the basis of the following findings of fact and rulings of law.
Findings of Fact
In December 2009 Cassidy was detained at the Bristol County House of Correction without bail on a charge of first-degree murder for the killing of a certain James Madonna (“Madonna”).
The duly promulgated state Department of Correction (“DOC”) regulations on inmate outgoing correspondence in county facilities, at 103 CMR 948.07, stated: “Written policy and procedure shall provide, at a minimum, the following: ... (2) The opening and inspection of outgoing non-privileged mail shall only be done upon the authorization of the Sheriff/facility administrator when there is reasonable belief that such action is necessary to maintain the order and security of the county correctional facility. Any such inspection of mail should be documented.”
The DOC regulations were prefaced by the statement that they “are not intended to confer any procedural or substantive rights not otherwise granted by state or federal law, nor any private cause of action.” 103 CMR 900.03.
The written policy promulgated by the Sheriff with regard to inmates’ non-privileged outgoing correspondence provided: “The opening and inspection of outgoing, non-privileged mail shall only be done upon the authorization of the Sheriff [and various designated senior subordinates). Staff shall log any such inspections.” Policy 19.01.13. Hearing Exhibit (“Exhibit”) 6.
Although a copy of the inmate handbook was not produced as evidence, all inmates at the Bristol County House of Correction are informed in some form of words that their correspondence is subject to monitoring.
The Assistant Superintendent of the Bristol County Sheriffs Office, Vito Scotti (“Scotti”) testified. The Court found him credible. As Assistant Superintendent, Scotti was Chief of Law Enforcement and Internal Affairs at the House of Correction. The Sheriff had delegated to Scotti authority to approve the monitoring of outgoing inmate mail.
James Mello (“Mello”), an Investigator at the Sheriffs Office and a member of the Internal Affairs unit, also testified. The Court found him credible. It was Mello’s responsibility to oversee the monitoring of *590 outgoing inmate mail that had been approved by Scotti.
In November 2007, Trooper Michael Cherven of the Massachusetts State Police (“Cherven”) was assigned as a homicide detective to the Bristol County District Attorney’s Office. In that capacity he was assigned to be the case officer for the Madonna homicide.
In December 2007 Cassidy was arrested for the Madonna murder, and he has been held since at the Bristol County House of Correction awaiting trial.
In late November 2009 Chervin and Detective Peter Corr of the Taunton Police Department (“Corr”) were introduced to an ATF agent who had an informant who had shared a cell with Cassidy at the Bristol County House of Correction. The informant had recently received a letter from Cassidy asking the informant’s assistance in disposing of an item that was suspected to be connected to the Madonna homicide. Upon reviewing the letter, Chervin and Corr enlisted the informant’s cooperation in following through with the scenario that Cassidy requested that the informant execute.
The informant did so, and two days later a weapon matching the firearm used in the Madonna homicide was recovered.
Within several days of the recovery, the informant received additional correspondence from Cassidy (addressed from the House of Correction) with instructions to plant the weapon in a vehicle belonging to a relative of Madonna’s. Cassidy’s plan was ultimately to have the police tipped off as to the weapon’s location in the vehicle, which would then (Cassidy expected) cause the authorities’ suspicion to focus on Madonna’s relative and to exculpate Cassidy.
As the latter events were unfolding, Chervin and Corr contacted Scotti and Mello on December 3, 2009, informed them that they were engaged in a homicide investigation and requested that a “cover” be placed on Cassidy’s incoming and outgoing mail. Chervin and Corr requested that the institution’s policy as to the routine monitoring of incoming mail be followed as to Cassidy and that copies be made of the envelopes of Cassidy’s outgoing mail. Mello was asked to follow the Sheriffs internal policies and only open outgoing mail if it was normally opened.
Neither Scotti nor Mello was familiar with the term, “cover.” However, inasmuch as they were informed that the Sheriffs assistance was requested in connection with a murder investigation, Scotti approved the monitoring thereafter of Cassidy’s outgoing mail. The approval was documented by completion of a designated form for the purpose. Exhibit 3. To Scotti and Mello “monitoring” meant opening and examining the contents of an inmate’s mail.
Five days later, on December 8th, Chervin and Corr were contacted by Mello. Mello informed them that a letter from Cassidy had been intercepted which appeared relevant to the Madonna investigation.
Upon their examination of the letter, Exhibit 4A, Chervin and Corr found that it was addressed to Cassidy’s father and that it contained instructions to further Cassidy’s scheme to set up Madonna’s relative as described above.
It is that letter that the defendant moves to suppress.
Rulings of Law
The motion is denied for two interrelated but independent reasons.
There were no violations of either the DOC’s regulations for county institutions or the Sheriffs procedures with regard to the opening of inmate mail. 103 CMR 948.07 permits inmate mail to be opened if there is “reasonable belief that such action is necessary to maintain the order and security of the county correctional facility.” The orchestration by an inmate of an obstruction of a murder investigation posed a direct threat to the “order and security” of the institution. Thus, the interception and reading of Cassidy’s letter fell within the scope of DOC’s authorization. Further, even if the Bristol Sheriffs inspection and disclosure did not comply with the letter of the DOC CMR, that circumstance would not require the suppression of the statement. That is because such inspection and disclosure did comply with the Sheriffs written procedures: It was done in connection with a law enforcement agency’s request for assistance; it was approved by an authorized designee of the Sheriff, and it was duly logged in. Compare Commonwealth v. Odgren, 455 Mass. 171, 228 (2009) (failure to comply with Rule 17 does not require suppression of subpoenaed information). The Sheriffs procedures as applied here did not violate either the defendant’s federal or state rights for the reasons stated more fully below.
The interception, inspection and disclosure of Cassidy’s letter were reasonable for Fourth Amendment and Article 14 purposes. The threshold issue is that “the defendant must have had a subjective expectation of privacy in the [letter] and society must be willing to recognize that expectation as reasonable.” Commonwealth v. Price, 408 Mass. 668, 672 (1990). See generally Commonwealth v. Connolly, 454 Mass. 808, 819 (2009). Here, Cassidy was informed in the inmate handbook that his mail was subject to monitoring. Further, through the DOC’s state-wide regulations, inmates are on notice that the contents of ingoing and outgoing mail are subject to monitoring. And the Sheriffs own procedures provide for such monitoring at the request of law enforcement engaged in investigations. Although the routine pre-call notification feature of the recording of inmates’ telephone calls is not present in-the mail monitoring context, the logic behind the courts having found no reasonable expectation of privacy in the inmate telephone call context applies here, as well. See Matter of a Grand
*591 Jury Subpoena, 454 Mass. 685, 689 n. 6 (2009), and Commonwealth v. Kastner, 76 Mass.App.Ct. 131, 135 (2010). “Reasonableness is the ‘touchstone’ of art. 14 . . . and the Fourth Amendment.” Commonwealth v. Garden, 451 Mass. 43, 51 (2008) (internal quote and citation omitted). In such circumstances, the opening of an inmate’s outgoing mail where the authorities have a substantial reason to suspect that he is using the mail to obstruct a murder investigation is reasonable.
ORDER
The defendants’ motion to suppress is DENIED.