## Commonwealth vs. Arlene T. Feodoroff.

No. 94-P-1106.

Plymouth. September 16, 1997. - October 30, 1997.

Present: Kass, Gillerman, & Spina, JJ.

*Constitutional Law,* Search and seizure, Privacy. *Privacy. Search and Seizure,* Expectation of privacy. *Eavesdropping. Practice, Criminal,* Instructions to jury, Failure to make objection. *Controlled Substances.*

Demands for telephone records under G. L. c. 271, § 17B, that were made by a police officer acting in the name of a district attorney, were not in compliance with the statute, however, where the telephone company's response to those demands produced no information material to a later application for a warrant to tap a criminal defendant's telephone, the defendant's challenge to the validity of those demands was without merit. [726-728]

There was no merit to a criminal defendant's contention that the provisions of the wiretap statute, G. L. c. 272, § 99, as amended by St. 1968, c. 738, § 1, superseded and repealed G. L. c. 271, § 17B, the telephone records demand statute. [728-729]

A telephone customer has no reasonable expectation of privacy in the telephone company's billing records of that customer, and the telephone records demand statute, G. L. c. 271, § 17B, granting the Attorney General and district attorneys access to such records, is not unconstitutional. [729-730]

On appeal from a criminal conviction, the defendant was not entitled to raise an issue with respect to a jury instruction to which no objection had been made as required by Mass. R. Crim. P. 24(B); in any event, there was no error in the jury instructions. [731-732]

Indictment found and returned in the Superior Court Department on February 6, 1990.

A pretrial motion to suppress evidence and other pretrial motions were heard by *J. Harold Flannery,* J., and the case was heard by *Cortland A. Mathers,* J.

*Ruth Greenberg* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

Kass, J. Some six months into an investigation of a drug

dealing ring in the Brockton area, the State police applied to a judge of the Superior Court for a warrant to tap the telephone of, among others, the defendant, Feodoroff. See G. L. c. 272, § 99. The tap was highly fruitful and became a significant step toward issuance of a warrant to search an apartment that Feodoroff inhabited at 3 Leo's Lane in Avon. The product of that search led to the arrest and conviction of Feodoroff for possession of cocaine with intent to distribute it. On her appeal, Feodoroff argues that the wiretap order depended on telephone records information that the police, purporting to act under G. L. c. 271, § 17B, had obtained unlawfully and that, therefore, the legal structure of wiretap, search, and conviction was impaired because it rested on an illegal footing. A second claim of error relates to jury instructions. We affirm.

At the center of the cocaine dealing operations that the police were investigating was Brent May, who also had a residence at 3 Leo's Lane. The two apartments in the building, Feodoroff's and May's, had separate entrances, but they were connected by a passageway on the second floor. When the police searched those apartments on December 22, 1989, they found in Feodoroff's apartment 6.75 grams of cocaine, baggies containing cocaine residue, a strainer and spoon stored next to some of the cocaine, a loaded .25 caliber handgun, and $760 in cash. In May's apartment they found 993.5 grams of cocaine; $5,950 was found in the mail slot of the building's garage.

1. *Telephone records obtained under G. L. c. 271, § 17B.* Under G. L. c. 271, § 17B, as inserted by St. 1966, c. 352,

> "Whenever the attorney general or a district attorney has reasonable grounds for belief that the service of [a telephone company] . . . is being or may be used for an unlawful purpose he may . . . demand all the records in the possession of such [telephone company] relating to any such service. [The telephone company] shall forthwith deliver to the attorney general or district attorney all the records so demanded. No such common carrier or employee shall be civilly or criminally responsible for furnishing any records or information in compliance with said demand."

(a) *Demands under § 17B signed by unauthorized person.* Of eighteen requests under that statute for installation and — in some instances — toll call information made to New England

Telephone Company, Nynex Mobile Communication Company, and Cellular One by the office of the district attorney for the Plymouth district, eight purported[1] to have been signed by the district attorney himself. The remaining ten requests were signed

"Lt. R. Lee Garrison, for

William C. O'Malley

District Attorney."

Feodoroff protests that, according to the statute, it is for *the* Attorney General and *the* district attorney to demand telephone records, not some underling. In other and somewhat analogous steps to be taken in the conduct of a prosecution, both decisional law and the text of rules of criminal procedure permit an assistant attorney general or an assistant district attorney to act in the name of, respectively, the Attorney General and the district attorney. Mass.R.Crim.P. 2(b)(6), 378 Mass. 845 (1979). *Commonwealth* v. *Marchionda*, 385 Mass. 238, 240-242 (1982). *Commonwealth* v. *Dellicolli*, 10 Mass. App. Ct. 909, 910 (1980). See also *Commonwealth* v. *Rosenfield*, 20 Mass. App. Ct. 125, 127-128 (1985).

There is a difference, however, between, the function, on the one hand, of assistant district attorneys and assistant attorneys general, who are officers of the court, sworn to uphold constitutional principles, trained to recognize constitutional issues (e.g., rights under the Fourth Amendment to the United States Constitution and under the State Constitution), and subject to discipline for conscious violation of constitutional inhibitions, and, on the other hand, the function of police officers. We intimate no disrespect for police officers and the vital role they play in our society. Police officers are trained and asked to investigate, to ferret out the evidence, and sometimes to do so aggressively. In view of the function assigned to police officers, it is not reasonable to expect them to be as self-censorious as an officer of the court about constitutional limitations. Constitutions recognize the dichotomy when they require police officers to obtain search warrants from a judicial officer. Here, the

---

[1] We use that hesitant verb because the handwriting of two signatures of the then district attorney, William C. O'Malley, is markedly unlike the handwriting of the remaining six.

Legislature provided for an investigatory tool, not as invasive as a house search or a wiretap, but nevertheless probing at the edges of privacy. We think it would defeat the legislative limitation that the tool be used on demand of the Attorney General or a district attorney if that limitation were read as permitting police officers or staff investigators to make a demand under G. L. c. 271, § 17B, on behalf of the Attorney General or a district attorney.

The ten demands for telephone records information made by Lieutenant Garrison were, therefore, not compliant with § 17B. No material information about Feodoroff, however, was produced by the telephone company in response to the Garrison demands. Only one demand by Garrison referred to a telephone number of Feodoroff's and, as to that unlisted number, the demand asked for subscriber and installation information. Feodoroff in her brief makes no connection between that demand of Garrison's and the return of any information supporting the later application (dated December 7, 1989) for a wire tap warrant. Feodoroff had already furnished a police detective (Washek) with her unlisted telephone number.[2] So far as Feodoroff is concerned, the invalidity of the Garrison demands was inconsequential. As some information useful in the application for the wire tap warrant may have been generated by the § 17B demand signed by the District Attorney (dated July 24, 1989), we proceed to consider other challenges made by Feodoroff to the validity of § 17B.

(b) *Implied repeal of § 17B.* Feodoroff argues that the enactment of comprehensive revisions to G. L. c. 272, § 99, the wiretap statute, by St. 1968, c. 738, § 1, superseded and repealed G. L. c. 271, § 17B, the telephone records demand statute. There is nothing to this. A wiretap statute that required permission from a judge on application of the Attorney General or a district attorney had been on the books since 1959, before the insertion into the statute books of § 17B, and the 1968 amendments, while comprehensive, did not constitute a

---

[2]On November 30, 1989, the same day that Garrison made his § 17B request, a Brockton police detective, Paul Washek, had interviewed Feodoroff about a shooting that had occurred eight days earlier in Brockton, in which Brent May had been "kneecapped." During the course of her conversation with Washek, Feodoroff told him that the telephone number at which she could be reached had been changed from (508) 587-6588 to (508) 587-0105.

philosophical innovation.[3] Nor is the subject matter of the two statutes more than distantly related. There is a marked distinction between authority to install electronic eavesdropping devices, such as taps,[4] pen registers,[5] and cross frame traps,[6] and the right of access to business records that a telephone company maintains in any event. The argument that G. L. c. 272, § 99, somehow preempts G. L. c. 271, § 17B, also falls before the strong presumption in the cases against implied repeal of a statute. *Commonwealth* v. *Hayes*, 372 Mass. 505, 511 (1977). *Commonwealth* v. *Jones*, 382 Mass. 387, 391 (1981). See generally 1A Singer, Sutherland Statutory Construction § 23.10 (5th ed. 1993). That presumption is only overcome by a showing that the "earlier statute . . . is 'so repugnant to and inconsistent with the later enactment covering the same subject matter that both cannot stand.' " *Commonwealth* v. *Hudson*, 404 Mass. 282, 286 (1989).

(c) *Asserted constitutional invalidity of § 17B.* Feodoroff says she had a reasonable expectation of privacy in her telephone billing records that G. L. c. 271, § 17B, unconstitutionally allows to be invaded. No statute or regulation drapes a particular cloak of confidentiality around the billing records of a telephone company. In tariff proceedings, the Attorney General and the Department of Public Utilities have taken the position that telephone subscribers who elect not to have their numbers listed have a reasonable expectation of privacy that their names, addresses, and telephone numbers not be released to the general public. See *New England Tel. & Tel. Co.*, D.P.U. 88-225/89-51 (1989); *AT&T Communications of N.E.*, D.P.U. 89-209 (1990); *New England Tel. & Tel. Co.*, D.P.U. 89-300 (1990). The telephone companies did not take a contrary position in those administrative hearings, and the question considered was largely

---

[3]Prior to 1959, wiretaps could be installed with permission of the Attorney General or a district attorney (see St. 1920, c. 558, § 1), the same level of surveillance prescribed for demands for telephone records in G. L. c. 271, § 17B, enacted forty-six years later. The 1959 act, St. 1959, c. 449, § 1, introduced judicial oversight of wiretaps.

[4]Taps are used to record conversations.

[5]Pen registers are used to record numbers dialed from a particular line. See *District Attorney for Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586, 589 (1980).

[6]Cross frame traps can record the numbers of incoming calls. See *District Attorney for Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586, 588 (1980).

whether the telephone companies had used adequate mechanical means to prevent broad dissemination of numbers that subscribers had asked not to be listed.

Broadcasting confidential information to third parties in the telephone and information business and to the general public, the issue in the D.P.U. proceedings, is not the same thing as responding to a statutorily authorized request by law enforcement authorities in connection with a particularized investigation of criminal activity. Nevertheless we are bound to ask whether a telephone customer's (in this case Feodoroff's) expectation of privacy in her telephone billing records (which include the numbers to which the customer made toll calls) is such that law enforcement authorities may not have access to them unless permission is granted by judicial order. In a case involving a customer's bank records, the Supreme Court provided a negative answer to that question. "The depositor," the Court wrote, "takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *United States* v. *Miller*, 425 U.S. 435, 443 (1976). That case was cited with approval in *Commonwealth* v. *Cote*, 407 Mass. 827, 833-835 (1990), a case still closer to the one at bar on its facts. In *Cote*, a district attorney, without request or other prompting from a grand jury, used a grand jury subpoena to obtain telephone message records from an answering service employed by a company that permitted the defendant to share use of that service. The court wrote in *Cote*, 407 Mass. at 835, that "while we consider the issue of the defendant's reasonable expectation of privacy to be a closer question under art. 14 than under the Fourth Amendment, we conclude that the defendant cannot hold a reasonable expectation of privacy in the telephone message records in the circumstances of this case." It is common, as any consumer trying to understand a telephone bill knows all too well, for the local carrier to be sharing billing information with the long distance carrier or vice versa. The expectation of privacy in business records so disseminated is necessarily attenuated; indeed that privacy is commonly penetrated by civil subpoena. The statute that grants access to such records to the Attorney General and district attorneys breaks no constitutional constraint.[7] We do not decide whether someone whose records have been obtained through a

---

[7]Feodoroff also floats — but no more than that — an argument that G. L. c. 271, § 17B, chills freedom of association and thereby violates the United

§ 17B demand may move for their suppression on the ground that the Attorney General or district attorney had no reasonable grounds for belief that the target was using its telephone for an unlawful purpose. In the instant case, the district attorney, through surveillance of 3 Leo's Lane, had solid basis for so believing.

2. *Instructions on constructive possession.* Significantly, trial counsel for Feodoroff did not object to the instruction that appellate counsel views as erroneous and damaging. It is occasionally worthwhile to restate the obvious: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . . ." Mass.R.Crim.P. 24(b), 378 Mass. 895 (1978). Evidence of telephone conversations engaged in by Feodoroff that leave little to the imagination about her involvement with selling drugs, evidence about the common passageway to May's apartment, and evidence of the cocaine and paraphernalia in her apartment relieve any doubt in the reviewing mind as to whether Feodoroff was justly convicted of possessing cocaine with intent to distribute it. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 650-651 (1997); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

In any event, Feodoroff's objection to the instruction is wholly unpersuasive. On the ground that the Commonwealth had produced insufficient evidence to connect Feodoroff with the large stash of cocaine in May's apartment, the trial judge had directed a finding of not guilty in favor of Feodoroff on a charge of trafficking in cocaine. In instructing the jury on the remaining count of possession with intent to distribute, the judge told the jurors that they were not to consider the cocaine found in May's apartment and on the issue of possession with intent to distribute could consider only the cocaine in her apartment — although they might consider she had a source of resupply conveniently at hand.

On appeal, Feodoroff says it was wrong for the judge to instruct the jury about the meaning of constructive possession — an instruction the judge gave quite accurately — because it

States Constitution's First Amendment. The point has not been briefed within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Nor does the point have any force. No one is asking for a list of members of a lawful association. Compare *NAACP* v. *Alabama ex rel. Patterson*, 357 U.S. 449, 462-463 (1958).

would have reminded the jurors of the stash in May's apartment. As the judge had expressly charged the jury that they were not to consider the cocaine in May's apartment, it is hard to credit the possibility of confusion that Feodoroff's appellate counsel attempts to conjure. There was no error.

*Judgment affirmed.*