NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1292                                        Appeals Court


COMMONWEALTH  vs.  PETER CHAMBERLIN.


No. 12-P-1292.

Bristol.      September 9, 2014. - December 5, 2014.

Present:  Kantrowitz, Grainger, & Hanlon, JJ.


Cellular Telephone.  Subpoena.  Practice, Criminal, Motion to
     suppress, Subpoena, Warrant.  Grand Jury.  Search and
     Seizure, Warrant, Plain view.  Due Process of Law.
     Evidence, Voice identification.  Identification.



     Indictments found and returned in the Superior Court
Department on November 21, 2007.

     Pretrial motions to suppress evidence were heard by D.
Lloyd Macdonald, J., and the cases were tried before Robert J.
Kane, J.


     Merritt Schnipper for the defendant.
     Tara L. Blackman, Assistant District Attorney, for the
Commonwealth.


     GRAINGER, J.  A jury of the Superior Court found the

defendant guilty of armed robbery while masked, G. L. 265, § 17,

kidnapping for purposes of extortion, G. L. c. 265, § 26, and

armed assault with intent to murder, G. L. c. 265, § 18(b).  The

convictions were based on the armed invasion of a real estate agency following telephone conversations between the defendant and the agency's owner during which the defendant made an evening appointment for the ostensible purpose of discussing one or more properties of interest to him.  The defendant appeals, asserting numerous procedural and evidentiary errors that we consider in turn, referring to the undisputed factual background as necessary to inform our discussion.

1.  <u>Production of telephone records</u>.  The victim told the police that although the defendant was masked, his voice was recognizable as belonging to an individual who identified himself as "Marco" during several telephone calls that culminated in an evening appointment at the victim's office for the time of the robbery.  The victim reported that the defendant spoke repeatedly during the robbery, making threats to the victim and referring to the victim's wife.  In the course of investigating the robbery, Fall River police Detective Lawrence Ferreira examined the victim's phone, retrieving a voicemail message from "Marco."  After obtaining call records from the victim's cellular telephone carrier, Detective Ferreira linked the defendant to the only number on the call list that the victim did not recognize.  Ferreira then contacted the carrier, T-Mobile, and requested call records associated with that number.  Ferreira informed the T-Mobile law enforcement

relations officer, Ronald Witt, that the defendant's phone was being used to contact the victim's family and that the "suspect has threatened the victim's family with bodily harm."[1]

The defendant's phone records were produced by T-Mobile voluntarily and without the issuance of an administrative subpoena, G. L. c. 271, § 17B, although T-Mobile accompanied the production with a request for a subpoena within forty-eight hours.  The record indicates that the assistant district attorney in charge of the case sent a grand jury subpoena to Witt the day following T-Mobile's production; that subpoena was not in evidence and is not in the record.

a.  General Laws c. 271, § 17B.  The defendant asserts that the phone records produced by T-Mobile were obtained in violation of G. L. c. 271, § 17B, and that this violation warrants suppression of those records.  Neither party contends that the defendant has a constitutional expectation of privacy in his phone records.  Indeed, the defendant could not make such a claim.  See Commonwealth v. Augustine, 467 Mass. 230, 244

_____

[1] Witt characterized his understanding of the case as "murder suspect, threat to family," and testified that this understanding was based on "what the police would have told me." Detective Ferreira denied describing the case as one involving murder.  The inconsistency does not affect our analysis.

(2014).[2]  Therefore, the question before us is one of a statutory or procedural, not constitutional, violation.

First, we conclude that an administrative subpoena pursuant to G. L. c. 271, § 17B, was not required in this case.  This issue appears to be one of first impression.  While the Supreme Judicial Court and this court have addressed the use of the § 17B procedure, neither court has addressed whether a § 17B subpoena is required to obtain phone records in all instances. The defendant's reliance on Commonwealth v. Vinnie, 428 Mass. 161, cert. denied, 525 U.S. 1007 (1998), and Commonwealth v. Feodoroff, 43 Mass. App. Ct. 725 (1997), is unavailing on this question, as neither case suggests that § 17B is the exclusive procedure by which the Commonwealth may obtain phone records.[3] We first look to the language of the statute itself to determine whether a § 17B subpoena is the exclusive means by which to obtain phone records.  Commonwealth v. Boe, 456 Mass. 337, 347 (2010).

---

[2] The judge also found that both the police and T-Mobile followed the carrier's procedures in good faith and that consequently, also as a factual matter, there was a very limited expectation of privacy in these records that revealed only numbers contacted by the defendant's phone (contents of conversations are not at issue here).

[3] Feodoroff holds that an officer of the court, and not a police official, may issue a § 17B subpoena, 43 Mass. App. Ct. at 727-728; Vinnie provides that suppression is an appropriate remedy for a violation of § 17B, 428 Mass. at 178.

The language of § 17B[4] is permissive, not mandatory, and is entirely silent with respect to the voluntary production of documents by a third-party phone company.  The Supreme Judicial Court has recognized that, while many mechanisms exist to obtain documents through judicial process, documents can also be obtained by law enforcement personnel through informal, extrajudicial process for investigative purposes.  See Commonwealth v. Odgren, 455 Mass. 171, 186 n.26 (2009), citing Commonwealth v. Mitchell, 444 Mass. 786, 791-792 n.12 (2005).  Nothing in the language of § 17B changes that reality.  While § 17B may be the only available mechanism in certain circumstances, neither statute nor case law renders it the exclusive method by which to obtain third-party records.

   b.  Stored Communications Act.  Moreover, we discern no provision of the Federal Stored Communications Act (the act), 18

---

[4] General Laws c. 271, § 17B, as in effect in September, 2007, see St. 1966, c. 352, reads, in pertinent part:

   "Whenever the attorney general or a district attorney has reasonable grounds for belief that the service of a common carrier . . . is being or may be used for an unlawful purpose he may, acting within his jurisdiction, demand all the records in the possession of such common carrier relating to any such service.  Such common carrier shall forthwith deliver to the attorney general or district attorney all the records so demanded."  (Emphasis supplied.)

   Section 17B was subsequently amended in 2008.  See St. 2008, c. 205, § 3.  That revised version is not applicable here; the differences are not material to our analysis.

U.S.C. §§ 2701 et seq. (2006), that compels a different conclusion.  The act "directs how governmental entities may obtain communication records from third-party providers of electronic communication services."  Commonwealth v. Augustine, 467 Mass. at 235.  The section of the act at issue here is § 2702, entitled "Voluntary disclosure of customer communications or records" (emphasis added).  We are not aware of any reported cases in Massachusetts which interpret § 2702 of the act,[5] and the act's plain language contemplates the voluntary disclosure of records in certain circumstances.  One such circumstance, relevant here, is when the custodian believes in good faith, that there are exigent circumstances.  18 U.S.C. § 2702(c)(4) (2006).[6]

The motion judge found that a § 17B subpoena was not required because there was no demand for the records; they were voluntarily produced to Detective Ferreira after what amounted to no more than an inquiry to T-Mobile.  We accept the motion judge's findings of fact absent clear error.  See Commonwealth v. Watson, 36 Mass. App. Ct. 252, 257 (1994), citing

---

[5] The only reported Massachusetts cases discussing the act interpret § 2703, which governs compelled disclosure of phone records.  See Commonwealth v. Augustine, 467 Mass. 230 (2014). See also Preventive Med. Assocs. v. Commonwealth, 465 Mass. 810, 818-819 (2013).

[6] Congress has also decreed that suppression is not a remedy for violation of the act absent a constitutional violation.  18 U.S.C. §§ 2707, 2708 (2006).

Commonwealth v. Harmon, 410 Mass. 425, 428-429 (1991).  Finding no error, we conclude for purposes of our analysis that T-Mobile produced the records voluntarily after inquiry by the Fall River police.

While, as stated, the Commonwealth was not required to use a § 17B administrative subpoena, the voluntary disclosure of phone records here was only proper under Federal law if there were exigent circumstances.  18 U.S.C. § 2702(c)(4) (2006).  The motion judge found that exigent circumstances did exist at the time T-Mobile produced the records.  That factual determination is again reviewed under an abuse of discretion standard and, again, we find none.  In doing so, we refer particularly to the violent nature of the crime and the perceived ongoing threat to the victim and his family.[7]  The denial of the motion to suppress was proper.

---

[7] During the robbery the defendant repeatedly told the victim, "I know where you live."  The defendant ascribes significance to the fact that in the delivery of this threat the robber recited an incorrect address, leading the victim to reply, "Sir, you have the wrong guy."  We do not agree that the police were required to rely on this mistake and therefore required to conclude that the defendant's threats were not serious, especially in light of the robber having shot the victim point blank in the head, having instructed an accomplice to "plug" the victim some more, and the subsequent anonymous calls to the victim's actual residence.  It is undisputed that the robbery was undertaken in a very violent manner including the attempt to murder the victim in cold blood while he was bound and on the floor.

c. Grand jury subpoena. Finally, while we conclude the Commonwealth was not required to use a § 17B administrative subpoena, we agree with the defendant that the Commonwealth's use of a grand jury subpoena was procedurally improper. The grand jury subpoena issued here was issued at the request of the phone company after the records had already been produced to the police. The records could not have been intended to be produced at a grand jury, as none had been convened at the time. This is a statutory or ethical violation, not a constitutional one. See Commonwealth v. Mitchell, 444 Mass. at 798 n.17. Suppression is not the appropriate remedy absent a showing of prejudice to the defendant. See Commonwealth v. Smallwood, 379 Mass. 878, 887-888 (1980); Commonwealth v. Cote, 407 Mass. 827, 832-833 (1990). We note that the defendant appropriately conceded at oral argument that there was no prejudice flowing from the improper use of the grand jury subpoena.

2. "No-knock" search warrant: reappraisal. The defendant asserts that evidence seized in his residence should have been suppressed because the police failed to conduct a threshold reappraisal to ensure the necessity of the no-knock entry authorized by the search warrant. We do not agree.

The defendant does not argue that the inclusion of the no-knock provision in the warrant was itself improper, and such an argument would be unavailing under the circumstances we have

already recited relating to the violent nature of the crime and the threats uttered during its commission. See note 7, supra. Rather, the argument made to the motion judge and pressed on appeal is that a reappraisal is required in all cases, and that the failure to engage in one renders the search invalid. Our case law does not apply such a categorical rule. Commonwealth v. Scalise, 387 Mass. 413 (1982), on which the defendant relies, is a case in point: "We recognize that the facts existing at the time the warrant is issued may no longer exist at the time the warrant is executed. In those instances, the officers would be required to knock and announce their purpose." (Emphasis added.) Id. at 421. Reappraisal is not a formalistic exercise mandated in all circumstances -- it is a recognition that the provisions of a warrant are conditioned on the continued existence of the sworn facts justifying the abrogation of constitutional rights until the warrant is executed.[8]

Circumstances commonly justifying a failure to knock were present here. In the context of the all-important consideration of officer safety, we refer again to the violent nature of the crime and the demonstrated disregard for life shown by the

_____

[8] In applying a flexible approach, the Supreme Judicial Court has also recognized the converse -- that an unannounced entry may be justified by circumstances at the time of execution, even though the warrant itself does not contain a no-knock provision. Commonwealth v. Jimenez, 438 Mass. 213, 217 (2002), citing Commonwealth v. Scalise, 387 Mass. at 422 n.8.

suspect.[9]  With reference to preservation of evidence, the articles enumerated in the warrant included gloves, checks, zip ties, and ammunition casings; such items are in many cases small and capable of concealment or destruction.  These factors, clearly, remained unchanged from the time of issuance until execution of the warrant.

The defendant argues that because the police were spotted by the defendant's wife prior to entry, and then engaged in conversation with her, a reappraisal was mandated.  The loss of the element of surprise, however, is a factor that justifies a prompt unannounced entry, rather than the contrary.  Commonwealth v. Benlien, 27 Mass. App. Ct. 834, 836-837 (1989), and cases cited therein.  As several police witnesses pointed out in testimony at the suppression hearing, the entry team was faced with the possibility that the defendant had been alerted by his wife to the police presence, and that she was seeking to delay their access at his behest.[10]

---

[9] The defendant characterizes the motion judge as having adopted a per se rule that a threshold reappraisal is not possible when the suspect of a violent crime remains at large. We find no such holding, explicit or implied, in the record.

[10] In the sensible words of one of the officers, challenged to explain why being seen by the defendant's wife, who then promised to open the door for the police, was not a reason to reappraise:  "Well, we get lied to a lot, yeah."

The defendant also asserts a violation of his due process rights because the motion judge did not allow him to compel the testimony of three additional members of the police entry team after three officers had already testified. The defendant has failed to specify the relevant issue that the additional testimony would cover, or to make a proffer of the evidence he was anticipating.[11] The Commonwealth stipulated to the affidavit provided by the defendant's wife for purposes of determining whether additional witnesses were needed and whether the warrant was properly executed. The motion judge was well within his discretion in ruling that additional witnesses would not be called. See Commonwealth v. Carroll, 439 Mass. 547, 552-553 (2003) (trial judge's discretion to exclude cumulative testimony).

3. Plain view exception to the warrant requirement: inadvertence. During their search of the defendant's home the police seized the defendant's computer containing, among other evidence, Fall River real estate listings that had been sent by electronic mail message (e-mail) to the defendant after he feigned interest in purchasing property so that he could gain

---

[11] We do not consider the defendant's reference to a discrepancy on the subject of any possible prior interaction between any of the officers and the defendant's wife to raise a relevant issue. Regardless of whether or not the officers had had previous contact with the defendant's wife, they were not required to accept assurances from her that she was alone or that she would provide prompt access.

entrance to the victim's office. They also discovered printouts of such listings. Neither the computer nor the hard copy listings were identified in the search warrant and they are not mentioned in the supporting affidavit. The defendant argues that the police had probable cause to anticipate the presence of both the computer and the real estate listings and that, therefore, the requirement of inadvertence for seizure of items in plain view mandates their suppression.

We do not agree with the defendant that the police had probable cause to anticipate finding printed real estate listings at his residence. They were informed by the victim that e-mail messages containing requested real estate listings had been sent to the defendant. The evidence on which the police investigation was based led to the conclusion that the defendant had no genuine interest in Fall River real estate. He requested the listings merely as a pretense to gain access to the office he planned to rob. The police had no reason to anticipate that the defendant would print and retain listings of seven different properties in which he had no interest, and that these would be kept at his residence.

"The anticipation of finding some additional contraband or other evidence of criminality is not the same as having probable cause to believe that specific items of evidence will be present at the location to be searched. Such generalized anticipation

undoubtedly exists in conjunction with almost every search, and to conclude that its presence negates inadvertence would stretch that requirement beyond its intent and limited purpose." Commonwealth v. Balicki, 436 Mass. 1, 14 (2002).

Under these circumstances we do not need to address the seizure of the computer. Even were we to agree with the defendant's argument, we would be hard pressed to deem the resulting evidence prejudicial. The real estate listings found on the computer are duplicative of the printouts, which were in plain sight and not subject to the inadvertence exception. To the extent the defendant claims that other evidence was seized in error, we discern no prejudice in light of the overall strength of the Commonwealth's case involving, as it did, eyewitness voice and facial identification, phone records, real estate listings, and the defendant's incriminating statements.

4. Voice identifications. Finally, the defendant complains that the trial judge improperly admitted the voice identification of the defendant by two witnesses. The gravamen of this assertion is that the procedures used were one-on-one rather than including the defendant's voice among others, that the police officers specifically mentioned the defendant to the witnesses before the identifications, and that the identifications were not performed until several years after the witnesses had last spoken with the defendant.

This complaint overlooks the long association between the witnesses and the defendant,[12] a factor that renders these alleged defects nonsuggestive.  Suggestiveness is typically an issue when the police are seeking an identification from a witness who has had a single, perhaps brief, exposure to a suspect.  In such a case a prompt opportunity to make an identification under neutral conditions provides assurance that the result is not unduly influenced by extraneous factors such as a deteriorated memory and a perception of undisclosed additional police knowledge.  See, e.g., Commonwealth v. Leaster, 395 Mass. 96, 102-104 (1985) (discussing factors creating suggestiveness in a show-up identification).  In reviewing a claim that a voice identification was unduly suggestive we look to a totality of the circumstances.  See Commonwealth v. Saunders, 50 Mass. App. Ct. 865, 874 (2001), S.C., 435 Mass. 691 (2002) (discussing circumstances of voice identification in the context of five-prong test set forth in Commonwealth v. Marini, 375 Mass. 510, 516-517 [1978]).  See generally Mass. G. Evid. § 901(b)(5) (2014).

"In the discretion of a trial judge, a voice identification may be considered by a jury as long as the witness expresses

---

[12] Each witness had known the defendant for about twenty years; one was a good friend, and the other had a child with him.

some basic familiarity with the voice he or she claims to identify."  Commonwealth v. Mezzanotti, 26 Mass. App. Ct. 522, 527 (1988).  We conclude under these circumstances that the judge did not abuse his discretion.[13]

Judgments affirmed.

---

[13] Even were we to assign error, we would be hard pressed to deem the voice identification testimony prejudicial in light of the overall strength of the Commonwealth's case.