NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11877


COMMONWEALTH  vs.  PETER CHAMBERLIN.



Bristol.     October 6, 2015. - February 19, 2016.

Present (Sitting at New Bedford):  Gants, C.J., Spina, Cordy,
Botsford, Duffly, Lenk, & Hines, JJ.



Cellular Telephone.  Subpoena.  Practice, Criminal, Motion to
    suppress, Subpoena, Warrant.  Search and Seizure, Warrant.




Indictments found and returned in the Superior Court
Department on November 21, 2007.

Pretrial motions to suppress evidence were heard by D.
Lloyd Macdonald, J., and the cases were tried before Robert J.
Kane, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Merritt Schnipper for the defendant.
Tara L. Blackman, Assistant District Attorney, for the
Commonwealth.
Chauncey B. Wood, Matthew R. Segal, Jessie J. Rossman,
Kevin S. Prussia, & Caitlin W. Monahan for Massachusetts
Association of Criminal Defense Lawyers & another, amicus
curiae, submitted a brief.
Marguerite T. Grant, Assistant District Attorney, for
District Attorney for the Norfolk District, amicus curiae,
submitted a brief.

LENK, J.  In the aftermath of an attempted robbery in 2007, where the victim was bound, threatened, and shot, the police conducted an investigation seeking three attackers who had fled the scene.  As part of that investigation, a detective obtained from a cellular telephone service provider certain subscriber records for the defendant's telephone number.  The information thus obtained formed part of a later affidavit offered in support of a search warrant that, in turn, ultimately yielded several items of an incriminatory nature subsequently admitted at trial.  Before trial, the defendant without success moved to suppress the telephone records and the physical evidence obtained pursuant to the warrant.  He was convicted of armed robbery while masked, G. L. c. 265, § 17; kidnapping for purposes of extortion, G. L. c. 265, § 26; and armed assault with intent to murder, G. L. c. 265, § 18.  Following affirmance of his convictions by the Appeals Court, see Commonwealth v. Chamberlin, 86 Mass. App. Ct. 705, 713 (2014), we allowed the defendant's application for further appellate review, limited to issues related to his cellular telephone records.

The basis for the defendant's challenge is the government's failure to comply with G. L. c. 271, § 17B, the telephone records demand statute, as then in effect.  That statute in essence authorized the Attorney General or a district attorney on certain conditions to demand of common carriers (like the

cellular telephone service provider here), by means of an administrative subpoena, all pertinent records in the provider's possession.  There is little question that the means used here to obtain the records -- a request made by a detective directly to the provider for voluntary production forthwith of the records -- was not in compliance with the formal process contemplated in G. L. c. 271, § 17B.  The defendant maintains that G. L. c. 271, § 17B, establishes a baseline formal process necessary to the government's gaining access to such records. The government, on this view, having failed to comply with G. L. c. 271, § 17B, is foreclosed from circumventing its requirements and obtaining such records by informal means; the records obtained should accordingly be suppressed, along with any related evidence derived therefrom.

We conclude that G. L. c. 271, § 17B, as then in effect, did not itself preclude the government from obtaining the records at issue here.  Although the means employed to obtain the records also had to comply with the requirements of the Federal Stored Communications Act, 18 U.S.C. §§ 2701 et seq. (2006), we discern no error in the motion judge's determination that those requirements were met in this case.  Accordingly, the

motions to suppress were correctly denied and we affirm the convictions.[1]

Background and prior proceedings. On September 24, 2007, three masked men held Antonio Alberto, the owner of a real estate agency, at gunpoint in his office; they bound his hands and ordered him to open a safe in the building. When Alberto did not open the safe, the men threatened him, stating that they knew where he lived and "had [his] wife." After a struggle, Alberto was shot through the ear.[2] He pretended to be dead until the intruders left, then called for emergency assistance and was taken to a hospital.

The following day, Alberto described the robbery to Lawrence Ferreira, a detective of the Fall River police department. Alberto said that he had recognized the voice of one of the intruders as belonging to "Marco," a man who had called him several times in the weeks before the robbery to express interest in properties listed by his real estate agency, and who had scheduled a meeting with him for the time of the robbery. Alberto also informed Ferreira that the intruders had threatened his family, but did not appear actually to know where

---

[1] We acknowledge the amicus brief of the Massachusetts Association of Criminal Defense Lawyers and the American Civil Liberties Union, and the amicus letter of the district attorney for the Norfolk district.

[2] Notwithstanding the location of the gunshot wound, Alberto suffered relatively minor injuries.

he lived, despite claims to the contrary.  Nevertheless, following the robbery, Alberto had been receiving hang-up calls at work and at home that "scared the hell out of" him.

Alberto reviewed the call log from his cellular telephone with Ferreira, and they were able to identify a telephone number for "Marco."  Ferreira then searched for the number on a "police related search engine" that provided him with the subscriber information associated with that number.  The subscriber information included the defendant's name and address.

What followed was the conduct contested in this appeal:  on September 26, 2007, Ferreira sought the defendant's telephone records directly from an employee in the cellular service provider's law enforcement relations department.  Rather than causing the provider to be served with an administrative subpoena or some other form of legal process, Ferreira gave the employee over the telephone "a brief synopsis" of his investigation, and promised that he would provide a subpoena within forty-eight hours.  On the night of September 26, 2007, Ferreira sent the employee a letter that included the suspect's phone number and a summary of the investigation.[3]  A few hours

---

[3] The letter stated:

"On Wednesday September 26, 2007[,] I Detective Lawrence D. Ferreira while assigned to the Major Crimes Division investigated a shooting incident in the city of Fall River[,] Ma.  The victim, a white male[,] sustained a

later, the employee provided Ferreira with the defendant's subscriber information and a call log for the defendant's cellular telephone number for the prior two weeks.[4]  The following day, September 27, 2007, Ferreira asked the assistant district attorney assigned to the case to send the provider a

---

single gunshot wound to the head area.  This victim is currently being treated by medical personnel.

"The suspect in this case is currently outstanding and has been contacting the victim's family via cellular telephone.  This suspect has threatened the victim's family with bodily harm.  Through this investigation, Major Crimes Detectives obtained the suspect[']s [tele]phone number to be [(xxx) xxx-xxxx].

"I am respectfully requesting information pertaining to the suspect[']s call log from September 16, 2007 to the current date.  I am also requesting subscriber information as to the suspect[']s name and address.

"I will comply with a court [subpoena] with the [forty-eight hour] window as required by [the cellular service provider].  Please assist the Fall River Police Department with the request."

[4] The subscriber information that the law enforcement relations officer sent to Ferreira included the defendant's name, address, and birthday; his cellular, home, and work telephone numbers; and his Social Security number.  This information corroborated the name and address that Ferreira had already found using the search engine.  The call log listed all calls to and from the defendant's telephone number from September 16, 2007, to September 26, 2007.  The log included approximately ten calls to Alberto's cellular telephone and office numbers.  Ferreira discussed the name, address, and call log in his affidavit supporting an application for a warrant to search the defendant's home.  They were also used at trial as evidence of the defendant's guilt.

subpoena for the records.  A grand jury subpoena apparently was sent the same day.[5]

As noted, the defendant's pretrial motions to suppress the records produced were denied after an evidentiary hearing.  In essence, the judge who heard the motions (motion judge) determined both that G. L. c. 271, § 17B, was not the exclusive means by which the government could obtain such records and that the service provider's good faith, voluntary disclosure of the records in exigent circumstances did not violate the Federal Stored Communications Act.  After a jury convicted the defendant, the Appeals Court determined, inter alia, that the defendant's motions to suppress properly were denied, see Chamberlin, supra at 706-710, and we allowed the defendant's application for limited further appellate review.

Discussion.  Because the defendant does not raise any constitutional claims,[6] our inquiry is limited to whether Ferreira was permitted to request the defendant's telephone

---

[5] The subpoena itself was not in evidence and is not in the record.

[6] See Smith v. Maryland, 442 U.S. 735, 743-745 (1979) (telephone subscribers have no reasonable expectation of privacy in telephone records under Fourth Amendment to United States Constitution); Commonwealth v. Vinnie, 428 Mass. 161, 178, cert. denied, 525 U.S. 1007 (1998) (telephone subscribers have no reasonable expectation of privacy in telephone records under art. 14 of Massachusetts Declaration of Rights).  But see Commonwealth v. Augustine, 467 Mass. 230, 244-255 (2014), S.C., 472 Mass. 448 (2015).

records directly from the service provider without first complying with at least the formal process set out in G. L. c. 271, § 17B. "[W]hen reviewing a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, but independently review the judge's ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Jewett, 471 Mass. 624, 628 (2015). In light of its text and legislative history, we conclude that G. L. c. 271, § 17B, as in effect in 2007, did not preclude the government from asking a service provider to disclose customer records voluntarily.[7] Nonetheless, under the Federal Stored Communications Act, service providers are permitted to disclose those records voluntarily only in certain limited circumstances. See 18 U.S.C. § 2702(c)(1)-(6). Because we discern no error in the trial court judge's determination that one such set of circumstances existed here, we affirm.

---

[7] Although some formal process appears to have been provided in this case eventually in the form of a grand jury subpoena, formal process generally cannot be an afterthought. See Commonwealth v. Benoit, 382 Mass. 210, 219 (1981), S.C., 389 Mass. 441 (1983) ("We can find no authority for applying the 'inevitable discovery' rule to cure an illegal warrantless search on the basis that it was inevitable that a warrant would be obtained"). We assume without deciding that the grand jury subpoena that was eventually provided was not sufficient on its own to overcome the defendant's motion to suppress. Cf. Vinnie, 428 Mass. at 178 (telephone records obtained by means of procedurally insufficient subpoena may be suppressed).

1.  Statutory overview.  General Laws c. 271, § 17B, was first enacted in 1966, apparently as part of a broader effort to combat the use of landline telephones in illegal gaming operations.  See, e.g., 1966 House Doc. No. 3610 (summarizing bills targeting illegal telephone gaming operations).  As originally enacted, the statute provided that the Attorney General or a district attorney could demand customer records from a service provider whenever there were reasonable grounds to believe that a subscriber to that provider's service was using the service for an unlawful purpose.  G. L. c. 271, § 17B, as inserted by St. 1966, c. 352.  By allowing the government to compel service providers to disclose customer records in the early stages of an investigation even when there was not yet probable cause for a warrant, the statute thus supplied "an investigatory tool, not as invasive as a house search or a wiretap, but nevertheless probing at the edges of privacy." Commonwealth v. Feodoroff, 43 Mass. App. Ct. 725, 728 (1997).  As we emphasized, "the statute [did] not provide the district attorney with a free hand to issue routine administrative subpoenas."  Commonwealth v. Vinnie, 428 Mass. 161, 178, cert. denied, 525 U.S. 1007 (1998).  If the Attorney General or a district attorney had "no reasonable grounds for belief that the target was using the telephone for an unlawful purpose," the telephone records could be suppressed.  Id.  General Laws

c. 271, § 17B, remained essentially unchanged until 2008. See St. 2008, c. 205, § 3.[8]

Twenty years after the Legislature enacted G. L. c. 271, § 17B, in 1966, the United States Congress enacted the Federal Stored Communications Act. See Pub. L. 99-508, 100 Stat. 1860 (1986). The Federal Stored Communications Act aims "to protect the privacy of users of electronic communications" during government investigations (citation omitted). Commonwealth v. Augustine, 467 Mass. 230, 235 (2014). It achieves that aim, as relevant here, by exposing to civil liability service providers that improperly disclose customer records to the government. See 18 U.S.C. §§ 2707-2708.[9] Service providers are permitted and indeed required to disclose customer records to a "governmental entity" when that entity has complied with one of the limited number of formal processes for making a demand, such as a warrant, a court order, or an administrative subpoena, as set forth in the act.[10] See generally 18 U.S.C. § 2703(c).

---

[8] The two other amendments to G. L. c. 271, § 17B, were minor changes in wording that have no bearing on the outcome of this case. See St. 1997, c. 164, § 292; St. 2008, c. 169, § 80.

[9] See Kerr, A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1241-1242 (2004) (noting shortcomings of civil liability enforcement scheme).

[10] A "governmental entity" is defined as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4) (2006).

Providers are permitted to disclose those records voluntarily to the government, however, only in limited circumstances.  See 18 U.S.C. § 2702(c)(1)-(6).  One such circumstance is when "the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."  18 U.S.C. § 2702(c)(4).

Hence, in 2007, when the records at issue in this case were requested, the government was required to comply with the applicable provisions of the Federal Stored Communications Act.[11] See Telecommunications Regulatory Bd. of P.R. v. CTIA-Wireless Ass'n, 752 F.3d 60, 68 (1st Cir. 2014) (Puerto Rico statute requiring service providers to disclose subscriber information without formal demand preempted by 18 U.S.C. § 2702[c]). Nevertheless, the Federal Stored Communications Act creates only a minimum set of privacy protections that States are free to supplement.  See Lane v. CBS Broadcasting Inc., 612 F.Supp.2d 623, 637 (E.D. Pa. 2009) ("Congress expressly authorized states

---

[11] The defendant does not dispute that, had the prosecutor rather than Ferreira issued to the service provider a timely administrative subpoena, that demand and the same documents as were provided here would have been compliant with both G. L. c. 271, § 17B, and the Federal Stored Communications Act, 18 U.S.C. §§ 2701, et seq. (2006).  Given what Alberto told Ferreira, it is not contested that the requisite reasonable grounds existed for belief that the defendant's telephone number was being used for an unlawful purpose.

to legislate in this field").[12]  Thus, regardless of whether a service provider is permitted to disclose a customer's records voluntarily under the Federal Stored Communications Act, State law may prohibit the government from informally requesting such disclosure.  The question before us is whether G. L. c. 271, § 17B, as in effect in 2007, prohibited the government from making such an informal request.

2.  Minimum formal process under G. L. c. 271, § 17B.  The defendant contends that G. L. c. 271, § 17B, as enacted in 1966 and in effect in 2007 when the records at issue in this case were obtained, established a minimum formal process that the government must comply with in all circumstances.  To support this view, he argues that St. 2008, c. 205, § 3, amending G. L. c. 271, § 17B, should guide our understanding of the statute as originally enacted.

"A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result."  Custody of Victoria, 473 Mass. 64, 73 (2015), quoting Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321, 339 (2015).  Neither the plain

---

[12] See also U.S. Internet Service Provider Association, Electronic Evidence Compliance -- A Guide for Internet Service Providers, 18 Berkeley Tech. L.J. 945, 983 (2003) ("since the original wiretap law in 1968, it has been clear that a state may have stricter [but not more lenient] requirements").

text of G. L. c. 271, § 17B, nor the context of its enactment supports the defendant's construction of the statute.

We consider the language of the statute in effect when the records at issue in this case were obtained. See Commonwealth v. Bradley, 466 Mass. 551, 560-561 (2013). The statute provided, in relevant part:

> "Whenever the [A]ttorney [G]eneral or a district attorney has reasonable grounds for belief that the service of a common carrier . . . is being or may be used for an unlawful purpose he may, acting within his jurisdiction, demand all the records in the possession of such common carrier relating to any such service. Such common carrier shall forthwith deliver to the [A]ttorney [G]eneral or district attorney all the records so demanded" (emphasis supplied). G. L. c. 271, § 17B, as enacted by St. 1966, c. 352.

On its face, G. L. c. 271, § 17B, set out an "investigatory tool" by which the government "may" obtain telephone records during an investigation. See Feodoroff, 43 Mass. App. Ct. at 728. The use of the word "may" in a statute generally "reflect[s] the Legislature's intent to grant discretion or permission to make a finding or authorize an act." Commonwealth v. Dalton, 467 Mass. 555, 558 (2014). By using the word "may" here, the Legislature indicated no more than that the government may, but need not, obtain telephone records by using this tool.

The defendant would read the Legislature's silence as to any other means available to the government as limiting the government only to formal processes such as a search warrant or

a grand jury subpoena.  However, we discern nothing in the language of the statute that imposed such constraints, and we must "not read into the statute a provision which the Legislature did not see fit to put there" (quotation and citation omitted).  See Chin v. Merriot, 470 Mass. 527, 537 (2015).[13]  That the Legislature supplied prosecutors with a statutory means to compel disclosure accordingly has no bearing on whether the government could also seek voluntary compliance from telephone companies in turning over customer business records.[14]

The legislative history of G. L. c. 271, § 17B, is consistent with this construction of the statutory text.  It contains no suggestion that the Legislature intended to prevent the government from asking service providers to disclose customer records voluntarily.  When G. L. c. 271, § 17B, was originally enacted, see St. 1966, c. 352, the law was just one

---

[13] See also Charbonneau v. Presiding Justice of the Holyoke Div. of the Dist. Court Dep't, 473 Mass. 515, 519 (2016), quoting Sellers's Case, 452 Mass. 804, 810 (2008) (interpreting statutory silence in context of legislative purpose).

[14] Prior decisions of this court have recognized the possibility that extrajudicial process might be available to obtain "investigative materials."  See Commonwealth v. Odgren, 455 Mass. 171, 186 n.26 (2009), quoting Commonwealth v. Mitchell, 444 Mass. 786, 791-792 n.12 (2005) ("[a]ny informal extrajudicial process that exists . . . by which a party involved in litigation may successfully obtain investigative materials that may be of help in preparing for trial, or may be useful during trial, is beyond the scope of this case").

of several contemporaneous bills that sought to address the possibility of collusion between landline telephone service providers and illegal bookmaking operations.  See, e.g., 1966 House Doc. No. 1494 (creating special commission to investigate alleged aid to bookmakers by service providers); 1966 House Doc. No. 1497 (prohibiting service providers from providing service to illegal gaming operations); 1966 House Doc. No. 3610 (summarizing bills aimed at service provider collusion with illegal bookmakers).  The "investigatory tool" that the Legislature created in G. L. c. 271, § 17B, thus apparently provided a means to combat illegal bookmaking when voluntary disclosure by a telephone service provider was not forthcoming or otherwise possible.  Notwithstanding the Federal Stored Communications Act's later concern about voluntary disclosure of telephone customer records by service providers, there is no evidence that the Legislature in 1966 had in mind any constraint on voluntary disclosure of this sort.

Recognizing the law's silence with respect to voluntary disclosure, the defendant urges us to understand the version of G. L. c. 271, § 17B, in effect when the records at issue in this case were obtained in light of St. 2008, c. 205, § 3 (2008 amendment).  However, "the views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one."  Mass. Comm'n Against Discrimination v. Liberty Mut. Ins.

Co., 371 Mass. 186, 194 (1976), quoting United States v. Price,
361 U.S. 304, 313 (1960).  Although the Legislature "may amend a
statute simply to clarify its meaning," amendments typically
presume a change in the law.  See Cook v. Patient Edu, LLC, 465
Mass. 548, 554 (2013), quoting Boyle v. Weiss, 461 Mass. 519,
525 (2012).

The 2008 amendment updated the 1966 statute that was
originally enacted to combat illegal telephone gaming operations
to take into account electronic communications services that
later came into widespread use.[15]  In addition, it substantively
altered the standard that the Attorney General or a district
attorney must meet in order to compel service providers to

---

[15] The 2008 amendment provided, in relevant part:

"Except as otherwise prohibited under [18 U.S.C.
§ 2703], whenever the [A]ttorney [G]eneral or a district
attorney has reasonable grounds to believe that records in
the possession of: (i) a common carrier . . . . ; or (ii) a
provider of electronic communication service as defined in
[18 U.S.C. § 2710(15)]; or (iii) a provider of remote
computing service as defined in [18 U.S.C. § 2711], are
relevant and material to an ongoing criminal investigation,
the [A]ttorney [G]eneral or district attorney may issue an
administrative subpoena demanding all such records in the
possession of such common carrier or service, and such
records shall be delivered to the [A]ttorney [G]eneral or
district attorney within [fourteen] days of receipt of the
subpoena. . . . Nothing in this section shall limit the
right of the [A]ttorney [G]eneral or a district attorney to
otherwise obtain records from such a common carrier or
service pursuant to a search warrant, a court order or a
grand jury or trial subpoena."

St. 2008, c. 205, § 3.

disclose customer records.[16]  These changes were more than simple clarifications.  Accordingly, neither the text of the 2008 amendment nor its legislative history affects our construction of the statute in effect in 2007.

We leave for another day whether G. L. c. 271, § 17B, as amended by St. 2008, c. 205, § 3, precludes the government from asking a service provider to turn over customer records voluntarily.  As noted above, the Legislature is free to supplement the statutory baseline provided in the Federal Stored Communications Act with additional privacy protections.  Neither the text nor the legislative history of G. L. c. 271, § 17B, in effect in 2007, however, supports the conclusion that the Legislature had already done so before the records at issue in this case were obtained.

3.  Compliance with Federal Stored Communications Act. Although the government was not prohibited from asking the service provider to disclose the defendant's records, the service provider was only free to provide that information to the government if one of the statutory exceptions set out in the

---

[16] Where previously prosecutors had needed "reasonable grounds for belief that the service of a common carrier . . . is being or may be used for an unlawful purpose" in order to demand customer records, see G. L. c. 271, § 17B, as amended through St. 1997, c. 164, § 292, after the 2008 amendment they only need reasonable grounds for belief that those records are "relevant and material to an ongoing criminal investigation."  St. 2008, c. 205, § 3.

Federal Stored Communications Act was met.  See 18 U.S.C. § 2702(c)(1), (4).  The motion judge considered specifically whether the service provider's disclosure in this case satisfied the exigent circumstances exception, 18 U.S.C. § 2702(c)(4). Under that exception, a service provider may disclose customer records voluntarily to the government if the service provider believes in good faith that an "emergency involving danger of death or serious physical injury . . . requires disclosure without delay of information relating to the emergency."  18 U.S.C. § 2702(c)(4).

We defer to the findings of the motion judge unless they were clearly erroneous.  See Jewett, 471 Mass. at 628.  The judge found that the service provider produced the defendant's records to the government voluntarily and in good faith, and did not violate the Federal Stored Communications Act.  The judge further found that exigent circumstances existed at the time the information was sought.

The record provides ample support for the judge's findings. Ferreira provided an employee in the service provider's law enforcement relations department with "a brief synopsis" of his investigation over the telephone, sent the employee a letter stating that the defendant, a customer of the service provider, was a suspect in a shooting incident and had threatened the victim's family, and promised that he would provide a subpoena

within forty-eight hours.  Although Ferreira's letter apparently misstated some of the facts of the investigation,[17] the service provider had a good faith belief that exigent circumstances justified disclosing the defendant's records to Ferreira, and disclosed those records voluntarily.  There was no error.

Judgments affirmed.

---

[17] For example, the letter stated that the defendant had "been contacting the victim's family via cellular telephone." There is no indication in the record that the hang-up calls to the defendant's home were made by a cellular telephone. Nonetheless, the judge who heard the motions to suppress determined that the police acted reasonably at the time they requested the defendant's records.  Cf. 18 U.S.C. §§ 2707-2708 (providing civil remedy for knowing or intentional violation of Federal Stored Communications Act).