NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-697                                            Appeals Court
14-P-698


COMMONWEALTH  vs.  SCOTT BALBONI
(and three companion cases[1]).


Nos. 14-P-697 & 14-P-698.

Middlesex.     December 4, 2015. - July 1, 2016.

Present:  Cypher, Wolohojian, & Carhart, JJ.


Burning of Property.  Destruction of Property.  Practice,
     Criminal, Motion to suppress, Affidavit.  Search and
     Seizure, Probable cause, Affidavit.  Constitutional Law,
     Search and seizure, Probable cause.  Probable Cause.
     Cellular Telephone.  Witness, Cross-examination.



Indictments found and returned in the Superior Court
Department on July 14, 2009.

Pretrial motions to suppress evidence were heard by
Christine M. Roach, J., and the cases were tried before
Elizabeth M. Fahey, J.


Mark G. Miliotis for Samuel Doxsey.
Patrick J. Noonan for Scott Balboni.
Eric A. Haskell, Assistant District Attorney, for the
Commonwealth.

_____

[1] One of the cases is against Balboni, and two are against
Samuel Doxsey.

CYPHER, J.  In these appeals from convictions of malicious burning of property, G. L. c. 266, § 5, and malicious destruction of property over $250, G. L. c. 266, § 127, the defendants, Samuel Doxsey and Scott Balboni, argue that (1) their motions to suppress documentary evidence obtained from third parties should have been allowed; (2) their motions to strike certain witness testimony were erroneously denied; and (3) the evidence of wilful and malicious burning was insufficient.[2]  We affirm.

1.  Background.  We recite the evidence in the light most favorable to the Commonwealth.  Additional details will be set forth in later sections as necessary.

On the evening of April 4, 2009, Daniel Feehan threw a party at his apartment; Doxsey's younger sister was in attendance.  At the party, Feehan sexually assaulted Doxsey's sister.  As she attempted to leave the party, Feehan pulled down her shirt, exposing her chest to the other partygoers.

After Doxsey's sister left Feehan's apartment, she telephoned Doxsey and told him that she had been assaulted at a party.  Doxsey was a student at the University of New Hampshire, living at a fraternity house in Durham, New Hampshire.

---

[2] Balboni and Doxsey were also indicted for conspiracy to commit malicious burning of personal property.  The judge allowed the defendants' motion to sever the conspiracy charges, which, at the close of trial, were placed on file and are not before us.

At around 4:00 A.M., after the party, the Lexington fire department responded to an alarm at an apartment complex where they found a pickup truck engulfed in flames.[3] Fire Captain John Wilson observed fire coming from the rear passenger compartment of the vehicle and flames rising from the exterior doors. On the side of the truck, Captain Wilson discerned "pour patterns" -- uneven liquid patterns running down the vehicle's surface -- where the paint had burned away. Captain Wilson observed a flaming object on the ground and found that the truck's plastic door handles had been consumed by fire and had fallen off the rear doors. Other evidence at the scene of the fire led Captain Wilson to conclude that the fire had started in the rear passenger compartment, where the incineration was most concentrated, and burned outward toward the truck's exterior.[4]

During his investigation, Captain Wilson learned that the truck was last driven approximately four hours before it caught fire and was parked in the location where firefighters found it.

---

[3] Feehan was known to drive the truck and to park it at the curb outside his apartment.

[4] On the ground near the burning truck, police found a black baseball cap and a red gas can lying on its side. The gas can contained a small amount of liquid that, according to Captain Wilson, smelled like gasoline. The liquid was later disposed of without being tested. When the fire was extinguished, Captain Wilson observed that the rear passenger seat of the truck had been completely destroyed and very little remained of the interior, but that the gas tank, located under the truck bed, remained intact.

He reasoned, therefore, that the engine had been cold at the time the fire started. He was unable to identify any source of ignition for the fire; there were no keys in the truck's ignition to engage the electrical system and no electrical accessories that might have sparked the fire.[5] Captain Wilson concluded that the fire had been intentionally set.[6]

Cellular site location information (CSLI)[7] associated with Doxsey's cellular telephone (cell phone) number showed that between the hours of 11:20 P.M. and 1:30 A.M., Doxsey's cell

_____

[5] The power door locks, which remain active whenever the vehicle is connected to a live battery, had been completely consumed by fire; thus, Captain Wilson was unable to inspect them as part of his investigation. Without having examined the power locks, Captain Wilson testified that he was unable to conclusively rule out an electrical source of the fire.

[6] During Captain Wilson's testimony, he stated that he had prepared a report outlining his investigation that, through oversight, had not been seen by the parties prior to trial. The report, which was read in evidence and admitted at trial, concluded as follows, "During my investigation I was unable to find a conclusive ignition source and I'm unable to rule out accidental causes. The presence of the gas container (containing gasoline), the late hour and the ball cap that looked like someone left in haste. I believe that this fire was intentionally set."

[7] "Cellular site location information (CSLI) . . . . is a record of a subscriber's cellular telephone's communication with a cellular service provider's base stations (i.e., cell sites or cell towers) during calls made or received[;] . . . this identifies the approximate location of the 'active cellular telephone handset within [the cellular service provider's] network based on the handset's communication with a particular cell site.'" Commonwealth v. Estabrook, 472 Mass. 852, 853 n.2 (2015), quoting from Commonwealth v. Augustine, 467 Mass. 230, 238 (2014), S.C., 470 Mass. 837 (2015).

phone connected to cellular towers in Durham, New Hampshire, but that at 3:44 A.M., Doxsey's cell phone initiated a call that connected to a cellular tower in Waltham, Massachusetts.[8]  On April 18, 2009, Lexington police Detective Richard Corazzini travelled to the University of New Hampshire campus in Durham, New Hampshire, where he observed a black Ford Explorer sport utility vehicle with Massachusetts license plates parked in a lot behind the fraternity house where Doxsey lived.[9]  A report from the registry of motor vehicles identified Cristina Balboni as the owner of the vehicle.

As discussed more fully, infra, investigation revealed that the defendants had purchased a gas can and gasoline at a gas station close to the scene of the fire on the date in question.

2.  Discussion. a.  Motions to suppress.  The defendants appeal from the denial of their motions to suppress documentary evidence obtained from third parties on the grounds that the Commonwealth failed to follow proper procedures to obtain the records.  The challenged evidence includes historical CSLI and telephone (phone) records associated with Doxsey's cell phone

---

[8] The apartment complex where the truck fire occurred was located on the border between the towns of Lexington and Waltham.

[9] At trial, Lexington police Detective Richard Corazzini testified that the driving time between Durham, New Hampshire and Lexington, Massachusetts, is approximately one hour and twenty minutes.

number and credit card records from accounts belonging to Doxsey and Balboni.

A grand jury investigating the truck fire issued three subpoenas duces tecum: to Verizon Wireless, seeking cell phone records associated with the cell phone numbers of Doxsey and his sister; to American Express (AmEx), seeking credit card records pertaining to Balboni's account; and to USAA Federal Savings Bank (USAA), seeking credit card records pertaining to Doxsey's account. Record keepers at Verizon Wireless, AmEx, and USAA produced the summonsed documents, affixed with certificates of authenticity, to the grand jury.

i. CSLI records. In furtherance of the grand jury investigation, the Commonwealth sought production of Doxsey's CSLI from Verizon Wireless, pursuant to a Superior Court order issued under 18 U.S.C. § 2703(d) (2006) of the Federal Stored Communications Act (§ 2703[d] order). Doxsey claims that the Commonwealth did not follow proper, constitutionally mandated protocols to obtain his personal cell phone records, because a search warrant was required for the CSLI. In April, 2010, the motion judge entered a margin ruling denying Doxsey's pretrial motion to suppress, based on her determination that compliance

with § 2703 was all that was required to properly obtain CSLI from a third-party cellular service provider.[10]

In June, 2009, the Commonwealth sought and obtained Doxsey's CSLI, consisting of "call detail records with cellsite information (geographical location, including street address and town/city of each cell tower) for the time period from April 4, 2009 through April 5, 2009,"[11] using a § 2703(d) order issued by the Superior Court.[12]  The § 2703(d) order directed Verizon Wireless to produce the information for consideration of the grand jury on or before June 18, 2009.  In support of its application for the § 2703(d) order, the Commonwealth provided an affidavit prepared by Lexington police Detective Steven Garabedian, in which he set forth the steps taken in the truck fire investigation and concluded that the CSLI sought would

---

[10] In her margin ruling, the judge stated that "[w]ith respect to [CSLI], the application to the court which found specific and articulable facts pursuant to the statutory standard is sufficient at this point in the development of Mass[achusetts] law.  G. L. c. 271, § 17B; In re: Application of U.S. for Orders, 509 F. Supp. 2d 76 (D. Mass. 2007)."

[11] In addition, the § 2703(d) order also directed Verizon Wireless to produce records of all incoming and outgoing calls to and from Doxsey's cell phone number from April 4, 2009, through April 5, 2009.

[12] To obtain a § 2703(d) order compelling production of certain cell phone records, a governmental entity must offer "specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought . . . are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).

establish "whether Samuel Doxsey travelled from New Hampshire to Lexington, Massachusetts on April 5, 2009," and whether Doxsey "was in the area of the Lexington Ridge Apartments at the time of the fire."

In February, 2014, while this case was pending on direct review, the Supreme Judicial Court announced a new rule for acquiring historical CSLI in Commonwealth v. Augustine, 467 Mass. 230 (2014) (Augustine I), and held that art. 14 of the Massachusetts Declaration of Rights requires the Commonwealth to obtain a search warrant supported by probable cause, in addition to a § 2703 order, before seeking to obtain a person's CSLI. Id. at 257. As a new rule, the warrant requirement was held to apply "to cases in which a defendant's conviction is not final, that is, to cases pending on direct review in which the issue concerning the warrant requirement was raised." Ibid. The court also invited the Commonwealth in such a case to show that its application for the § 2703(d) order satisfied the probable cause standard. Ibid. at n.40.

There is no dispute that the warrant requirement announced in Augustine I applies to the Commonwealth's efforts to obtain Doxsey's CSLI in this case.[13] We therefore consider whether the

---

[13] In Commonwealth v. Estabrook, 472 Mass. 852 (2015), the Supreme Judicial Court refined the warrant requirement, holding that, as long as the Commonwealth proceeds in compliance with 18 U.S.C. § 2703, it may obtain a person's CSLI for a period of six

Commonwealth is able to meet the search warrant requirement through a demonstration of probable cause in the affidavit originally submitted to support the § 2703(d) order.[14]  "Because a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo."  Commonwealth v. Foster, 471 Mass. 236, 242 (2015).

Our inquiry as to whether an affidavit supports a finding of probable cause "always begins and ends with the 'four corners of the affidavit.'"  Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), quoting from Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428 (1995).  We consider the affidavit as a whole and interpret it "in a commonsense and realistic fashion." Commonwealth v. Kaupp, 453 Mass. 102, 111 (2009), quoting from United States v. Ventresca, 380 U.S. 102, 108 (1965). "[I]nferences drawn from the affidavit need only be reasonable

_____

hours or less without meeting the probable cause standard for a search warrant.  Id. at 858 n.11.  In this case, where the Commonwealth sought CSLI evidence for a period of two days, or forty-eight hours, we understand Augustine I to require a warrant.

[14] In the recent case of Commonwealth v. Broom, 474 Mass. 486, 492-493 (2016), where, as here, the warrant requirement set forth in Augustine I was announced while the case was on direct appeal, the Supreme Judicial Court concluded that because the defendant had not raised the warrant issue before or during trial, he was not entitled to the benefit of the new rule. Here, the defendant did object to the introduction of the CSLI records without a warrant and is entitled to the application of the rule.

and possible, not necessary or inescapable."  Commonwealth v.

Cavitt, 460 Mass. 617, 626 (2011).

To justify the production of a person's CSLI, a supporting

affidavit must demonstrate probable cause to believe "that a

particularly described offense has been, is being, or is about

to be committed, and that [the CSLI being sought] will produce

evidence of such offense or will aid in the apprehension of a

person who the applicant has probable cause to believe has

committed, is committing, or is about to commit such offense."

Augustine I, supra at 256, quoting from Commonwealth v.

Connolly, 454 Mass. 808, 825 (2009).  See Commonwealth v. Broom,

474 Mass. 486, 491 n.8 (2016).

We summarize the facts recited in Detective Garabedian's

affidavit.  On April 5, 2009, at about 4:00 A.M., Lexington

police and firefighters responding to an alarm at an apartment

complex encountered a gray pickup truck fully engulfed in

flames.  On the ground beside the burning truck, they found a

red one-gallon plastic gas container and a black baseball cap.

Captain Wilson, a former arson investigator who responded to the

truck fire, opined that the fire had been intentionally set.

On April 10, 2009, Detective Garabedian interviewed Feehan,

whose father was the owner of the burned truck.  Feehan told

Detective Garabedian that, on the night of April 4, 2009, he had

been extremely intoxicated and, at a party at his home, he

grabbed the blouse of Doxsey's sister, pulled it down, and exposed her breast.

On April 14, 2009, police detectives visited a gas station in Lexington, where they learned that a red one-gallon plastic gas container matching the one found at the scene of the fire was purchased from that location at 3:07 A.M. on April 5, 2009. Surveillance footage recorded inside the gas station in the early morning hours of April 5 showed two young males entering at 3:06 A.M. and purchasing a red one-gallon gas container with a credit card. Sales records revealed that the purchaser used an AmEx credit card issued to Balboni. Surveillance footage recorded by a camera overlooking the gas pumps during the same period of time showed three males exiting a vehicle, one of whom was wearing a hat matching the one found at the scene of the truck fire. In the surveillance footage, one of the males who purchased the red gas container is shown purchasing gasoline with a credit card. Sales records revealed that he used a USAA credit card, issued to Doxsey, to purchase .931 gallons of gasoline at 3:09 A.M.

On April 24, 2009, Detective Garabedian interviewed Doxsey's sister, who reported that she had telephoned Doxsey, a student at the University of New Hampshire, on April 5, 2009, at around 12:15 A.M. and told him that Feehan had assaulted her.

Her brother returned her call at around 12:45 A.M., and the two spoke by telephone again around 9:00 A.M.

Cell phone records associated with Doxsey's number revealed incoming and outgoing calls made during the late night hours of April 4, 2009, and early morning hours of April 5, 2009, including several calls made around the time of the truck fire.

The affidavit concludes with a statement that the CSLI records are sought to determine whether Doxsey travelled from New Hampshire to Lexington on April 5, 2009, and whether he was in the vicinity at the time the fire was set.

Drawing reasonable inferences from Detective Garabedian's recitation, we conclude that the affidavit established probable cause to believe that a particularly described offense had been committed. See Augustine I, supra at 256. The late hour of night (a time when the truck would not have likely been in operation); the burning of a parked vehicle (suggesting that a malfunction was an unlikely source of the fire); and the gas can and baseball cap beside the burning truck (suggesting a hasty departure from the scene) permit inferences reinforced by the opinion of Captain Wilson. These circumstances support the inference that the truck was deliberately set on fire, in violation of G. L. c. 266, § 5 (malicious burning of property). We also conclude that Detective Garabedian's affidavit demonstrated probable cause to believe that the CSLI sought here

would produce evidence of the offense under investigation.
Ibid.

Feehan's assault on Doxsey's sister, and her communication with her brother immediately after the assault and hours before the truck was burned, suggest that Doxsey had a motive for setting the fire.  Doxsey used his credit card to purchase a small amount of gasoline, which he pumped into a gas can similar to the one found at the scene of the fire.  He was living in New Hampshire at that time, and yet he purchased the gas in Lexington, where the fire occurred.  He was recorded at the gas station around 3:00 A.M., one hour before firefighters and police discovered the truck ablaze.  These circumstances provide a nexus in agency, place, and time between Doxsey and the fire.

The CSLI sought by the Commonwealth had the potential to reveal whether Doxsey travelled from New Hampshire to Lexington on the night of the fire, and whether he was near the scene where Feehan's truck was set ablaze around the time that the fire was discovered.[15]  Doxsey's location during the night of

---

[15] The facts set forth in the affidavit indicate that the relevant time period for CSLI collection would have been between around 12:15 A.M. and 9:00 A.M. on April 5, 2009.  However, the Commonwealth sought CSLI for a forty-eight-hour period covering April 4 and 5, 2009.  The Commonwealth argued that even if probable cause underpinned only a portion of the § 2703(d) order, that part is severable from the defective portion, and CSLI was properly seized under the valid portion, citing Commonwealth v. Lett, 393 Mass. 141, 144-145 (1984), quoting from United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir.

April 4 and morning of April 5 would likely provide evidence of the offense under investigation by implicating Doxsey in the fire. In sum, the affidavit established probable cause to conclude that Doxsey was involved in the malicious burning of Feehan's truck. See Commonwealth v. Augustine, 472 Mass. 448, 455-460 (2015) (Augustine II). Accordingly, the Commonwealth properly obtained Doxsey's CSLI records under Augustine I's probable cause standard.

ii. Cell phone records. Doxsey challenges the denial of his motion to suppress his cell phone records, which, he claims, the Commonwealth unlawfully obtained from Verizon Wireless without prior judicial approval. Doxsey maintains that, under Commonwealth v. Odgren, 455 Mass. 171 (2009) (Odgren), the Commonwealth was required to follow the formal process established by Mass.R.Crim.P. 17(a)(2), 378 Mass. 885 (1979), as construed by Commonwealth v. Lampron, 441 Mass. 265, 268-271 (2004) (Lampron), when it sought to obtain third-party records in advance of trial.

The Commonwealth obtained call logs for the cell phone numbers of Doxsey and his sister pursuant to a grand jury

---

1983) ("infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant . . . but does not require suppression of anything described in the valid portions of the warrant"). At trial the Commonwealth did not rely on any of Doxsey's CSLI outside the limited time period for which there was undeniably probable cause.

subpoena served on Verizon Wireless.  The subpoena ordered Verizon Wireless to produce records of all incoming and outgoing phone calls, and subscribers' listing and billing information for April 4 and 5, 2009.  The information, affixed with an affidavit from the custodian of records at Verizon Wireless, was later produced to the grand jury.  Over Doxsey's objection, the records were admitted in evidence at trial.

At the outset, the Commonwealth properly used its investigative powers to bring the cell phone records before the grand jury.  G. L. c. 277, § 68.  See Odgren, supra at 185 n.25 (Lampron standard does not apply to grand jury subpoenas).  Although the Commonwealth did not follow the rule 17(a)(2) protocol mandated in Odgren by moving to resummons the cell phone record evidence in advance of trial, Odgren was decided after the Commonwealth was already in possession of the cell phone records procured by grand jury subpoena, and more than a month after Doxsey and his counsel received the records as part of the Commonwealth's pretrial notice of discovery.  As our case law makes clear, suppression is not an appropriate remedy absent a showing that the erroneously subpoenaed evidence caused prejudice.  See Commonwealth v. Hart, 455 Mass. 230, 243 (2009); Commonwealth v. Burgos, 470 Mass. 133, 147-148 (2014).

There was no prejudice shown here.  The relevant question is whether the defendant received the material sufficiently

before trial in order to prepare a defense. Commonwealth v. Kastner, 76 Mass. App. Ct. 131, 137 n.10 (2010). Doxsey and his counsel were provided a copy of the records on September 10, 2009; trial began on February 17, 2011, allowing Doxsey and his counsel approximately one and one-half years to prepare. See Odgren, supra at 188 (no prejudice where defendant received recordings early in proceedings and Commonwealth narrowed its use of evidence to forty-six day period); Commonwealth v. Burgos, supra at 148 (no prejudice where defendant was given recorded phone calls one month ahead of trial).

To the extent that Doxsey claims that suppression of his cell phone records was required because the Commonwealth's procurement of the records violated his constitutional rights, the claim fails. Massachusetts does not recognize a reasonable privacy interest in cell phone records such as those at issue here. See Commonwealth v. Feodoroff, 43 Mass. App. Ct. 725, 729 (1997) ("No statute or regulation drapes a particular cloak of confidentiality around the billing records of a telephone company"). Doxsey's motion to suppress cell phone records was properly denied.

iii. Credit and bank card records. Balboni and Doxsey challenge the denial of their motions to suppress credit card records that were obtained for trial by means other than those set forth in rule 17(a)(2) and Commonwealth v. Lampron, supra.

The Commonwealth initially obtained the defendants' credit card records using grand jury subpoenas directing AmEx and USAA to produce to the grand jury records of all transactions between April 1, 2009, and April 27, 2009, related to the defendants' accounts. Before trial, the Commonwealth issued a second subpoena, pursuant to G. L. c. 277, § 68, and G. L. c. 233, § 79J, ordering AmEx and USAA to produce the same records to the court on the day that trial was scheduled to begin. The Commonwealth used an entirely appropriate means of summoning records to trial. See Commonwealth v. Hart, supra at 243 (subpoena issued under G. L. c. 277, § 68, must direct third party to produce documents to court on day of trial). Rule 17(a)(2), concerning production of third-party documents prior to trial, is inapposite in the present case. The defendants' motions to suppress financial records were properly denied.

b. Challenged witness testimony. Balboni and Doxsey challenge the judge's denial of their motions to strike certain witness testimony. We find no merit in these claims.

i. Captain Wilson's testimony. Doxsey contends that the judge committed error in failing to strike "untrustworthy" testimony of Captain Wilson. Doxsey's claim lacks articulated reasoning and citation to authority; we decline to reach an argument that does not satisfy the requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See Commonwealth v.

Gray, 423 Mass. 293, 296-297 (1996) (claims of error unsupported by reasoned argument or citations do not rise to level of appellate advocacy required under Mass.R.A.P. 16[a][4]).

ii. Thomas Shamshak's cross-examination testimony. Balboni claims that the judge erred in denying the defendants' motion to strike the cross-examination testimony of defense witness Thomas Shamshak. At trial, the defendants called private investigator Thomas Shamshak, who photographed a black 2004 Ford Explorer registered to Cristina Balboni at the law office of defense counsel.[16] Shamshak testified that the gas tank port was located on the left, or driver's, side of the vehicle, unlike the vehicle with a right, or passenger's, side gas port appearing in video footage recorded at the Lexington gas station. Upon cross-examination, the prosecutor asked Shamshak whether he was aware that Cristina Balboni had two Ford Explorers registered in her name. Shamshak answered, "No, sir." The prosecutor then asked him if he was familiar with the Massachusetts criminal justice information system (CJIS) for performing record checks on motor vehicles. When Shamshak indicated that he was familiar with the system, he was shown (over objection by defense counsel) two unauthenticated CJIS reports, one relating to the vehicle described in Shamshak's

_____

[16] Shamshak was the sole witness who testified for the defense at trial.

direct testimony, and the other relating to a different Ford Explorer, both registered to Cristina Balboni. The two reports were marked for identification but were not admitted in evidence. Following cross-examination, defense counsel moved to strike all reference to the unauthenticated records. The judge denied the motion.

Here it appears that the prosecutor had a good faith basis to believe that two Ford Explorers were registered to Cristina Balboni, and pursued a line of inquiry meant to impeach the defense witness by eliciting information that tended to show the limited value of Shamshak's examination of the Balboni vehicle. "[T]he question[s], on a matter put in issue in the first place by the defendant, was within the scope of allowable cross-examination." Commonwealth v. Baldwin, 385 Mass. 165, 179 (1982). See Commonwealth v. Key, 381 Mass. 19, 28-30 (1980) (prosecution entitled to pursue subject raised on direct examination by defense counsel). Furthermore, even if the attempted impeachment exceeded the allowable scope, the Commonwealth ultimately did not contend that the vehicle located near the fraternity house, which was registered to Cristina Balboni, was the same vehicle depicted in the surveillance video from the gas station. Consequently, Shamshak's testimony addressed a peripheral matter.

The scope of cross-examination is within the sound discretion of the trial judge, and Balboni has not shown that the judge abused her discretion in allowing the prosecutor to use extrinsic evidence for impeachment purposes in this case. "When the extrinsic evidence relates exclusively to a collateral matter, the discretion of the trial judge has been described as 'nearly unreversible.'" Mass. G. Evid. § 613 (a)(4) & note (2016), quoting from Commonwealth v. Roberts, 433 Mass. 45, 51 (2000).

c. Sufficiency of the evidence. The defendants contend that the evidence did not suffice to prove beyond a reasonable doubt their wilful and malicious burning of the Feehan truck. In particular, they contend that the Commonwealth failed to eliminate accident as the cause of the fire.

To convict the defendants for malicious burning of property under G. L. c. 266, § 5, the Commonwealth was required to prove beyond a reasonable doubt that (1) the defendants, either individually or by knowingly participating in a joint venture, set fire to or burned the property, or caused property to be burned, or aided, counseled, or procured the property to be burned; (2) the burned property was personal property of another with a value exceeding twenty-five dollars and/or a motor vehicle; (3) the defendants acted wilfully; and (4) the defendants acted maliciously. "'[W]ilful' means intentional and

by design in contrast to that which is thoughtless or accidental." Commonwealth v. Smith, 17 Mass. App. Ct. 918, 920 (1983), quoting from Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 443 (1983).

We view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). Although Captain Wilson stated in his fire report that he was unable to rule out an accidental cause of the truck fire, on redirect examination, he explained that his inability to examine the power door locks, which were completely destroyed by the fire, prevented him from conclusively eliminating an electrical source of the fire. In other testimony, he expressed his opinion that gasoline had been used as an accelerant, and that the fire had been intentionally set. See Commonwealth v. Ruci, 409 Mass. 94, 97 (1991) ("inconsistencies in the witnesses' testimony . . . go to their credibility and do not affect the sufficiency of the evidence"); Commonwealth v. Harris, 1 Mass. App. Ct. 265, 268-272 (1973) (expert testimony that fire was incendiary properly admitted).

The jury were warranted in crediting Captain Wilson's opinion testimony, as well as other evidence (set out above) to the effect that gasoline poured onto the truck accelerated the fire; that the vehicle's gas tank remained intact; that the conflagration originated, and burned most intensely, in a part

of the truck where electrical malfunction was unlikely to occur; and that a gas can and a baseball cap were abandoned next to the burning truck, strongly supporting the inference of a hasty flight from the scene.[17] Viewed under the Latimore standard, the evidence sufficed to prove that the fire was wilfully and maliciously set.[18]

Doxsey argues also that the Commonwealth presented no evidence that he was present and participated in setting the fire. His assertion is belied by the facts in the record. Specifically, CSLI evidence tracking Doxsey's travel from Durham, New Hampshire, to Waltham, Massachusetts, in the early morning hours before the fire was set, and bank card records indicating that he purchased less than one gallon of gasoline

---

[17] Balboni contends that the Commonwealth's failure to perform forensic testing on the burned truck and the liquid found in the gas can precluded proof beyond a reasonable doubt that the fire was set wilfully and maliciously. "The fact that the police did not conduct a test has by itself little or no tendency to show the defendant's guilt or innocence. The relevance of such testimony appears to lie in the reason why a test was omitted." Commonwealth v. Flanagan, 20 Mass. App. Ct. 472, 475 (1985). In this case, Captain Wilson testified that his reasons for not testing the materials were a limited budget and his belief that it was unnecessary.

[18] See Commonwealth v. Rhoades, 379 Mass. 810, 816 (1980) (jury warranted in finding fire was wilfully and maliciously, as opposed to accidentally, set); Commonwealth v. Lanagan, 56 Mass. App. Ct. 659, 665 (2002) (jury could infer fire was intentionally set where accidental causes were absent and area bore signs of flammable liquid); Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010) ("Evidence of a defendant's guilt may be primarily or even wholly circumstantial").

for a gas can at a station located approximately three miles from where the burning truck was discovered, support the inference that Doxsey had the opportunity and the means to set the fire.  Additionally, Doxsey's knowledge that his sister was assaulted by Feehan suggests that Doxsey had a motive to set fire to Feehan's truck.  "Based on this circumstantial evidence, a rational juror could have concluded beyond a reasonable doubt that [Doxsey] participated . . . in setting the fire[]."  Commonwealth v. Rousseau, 465 Mass. 372, 387 (2013).

Judgments affirmed.